No. 27.—GEORGE HARGRAVES and WILLIAM L. WYNN, plaintiffs
in error *vs.* FELIX LEWIS, defendant in error.

[1.] In a bill filed to enjoin the collection of a judgment against the surety on a usu-
rious contract, by the principal, an order passed at chambers, before the return term
of the bill, directing the principal and legal interest tendered in the bill to be
accepted by the plaintiff in full satisfaction of the judgment, is in the nature of a
final decree, and void ; because the judge of the Superior Court, as chancellor, has
no right to pass such an order; nor can he decree finally in any cause without the
intervention of a jury.

[2.] If usury is paid by a surety to the contract, cognizant to its being nsurious, he
cannot recover the usurious interest from his principal.

[3.] In Georgia the jury and the judge constitute the chancellor.

In Equity.    Motion to dismiss bill for want of prosecution.
Who competent to render final decree in an equity cause.    Usury
paid by a surety, when not recoverable back out of his principal.
These questions, made by the record, are determined in this case.
From Muscogee Superior Court.    May Term, 1847.    Judge
ALEXANDER presiding in the Court below.

The facts and circumstances of this case are minutely and fully
stated in the opinion of the Supreme Court, to which the reader is
referred.

JOHNSON & WILLIAMS, for the plaintiffs in error, insisted that
the decree was *coram non judice,* and cited statutes, and rules of
Court.    That the decree was not final, and cited 8 *Wend.* 219.

JONES, BENNING & JONES, for the defendants in error, cited
2 *Dan. Ch. Prac.* 218, 221, 229, 230.

*By the Court*—NISBET, J., delivering the opinion.

This bill, filed by Felix Lewis, against George Hargraves and
William L. Wynn, in Muscogee Superior Court, makes the follow-
ing case.    Lewis borrowed of Hargraves a sum of money at
usurious interest, and gave for it his note, with security.    The
note was renewed frequently in the course of some six or eight
years, at the same usurious rate of interest, until the year 1830,
when Lewis, having removed to the south-west, at his instance,
and the instance of Hargraves, the last renewed note was taken

up by Pierce Lewis and John L. Lewis, the father and brother of the complainant, and their own note, with William L. Wynn indorser, delivered to Hargraves in its stead. This note, it is charged, was given for the original usurious debt. Hargraves brought suit against the indorser, Wynn, and Wynn, fraudulently combining with Hargraves to injure the complainant, confessed judgment for the whole amount of the note, principal, and legal and usurious interest. Upon this judgment, execution issued and was levied upon the property of Wynn. This bill, reciting these facts, and charging, that if Wynn pays, or is made to pay the usurious interest due on the judgment, the complainant will be compelled to refund it to him—avers that a tender to Hargraves of the principal and legal interest of the debt has been made, and that complainant is still ready and willing to pay the same; and prays that Hargraves may be perpetually enjoined from collecting the judgment, and Wynn from paying it. The injunction was granted, and the answer of Hargraves filed in vacation, before the appearance term, which admits the facts charged in the bill, except the charge, that the note of Pierce Lewis and John L. Lewis, with Wynn as indorser, was given at the instance of respondent; and on this point answering, that these makers of that note proposed to respondent to give him their note, with Wynn as security, for the note which he then held of Felix Lewis, and upon which they were indorsers; which proposition the respondent accepted, and delivered to them the note of Felix Lewis. Upon the coming in of the answer, Hargraves, by his counsel, before Judge Sturgis at chambers, moved to dissolve the injunction; which motion, after argument, was refused. *At the same time* the judge passed the following order:

Felix Lewis
    *vs.*
George Hargaves and
William L. Wynn. } Bill for discovery, &c.

In the above case, the sum of six thousand five hundred dollars having been tendered in satisfaction of the judgment in favour of Hargraves *vs.* Wynn, and 'the said sum having been deposited in the hands of the clerk: It is ordered that the same be paid to the attorneys of George Hargraves, *in full payment of said judgment;* unless the Court should decide that the complainant is bound to pay an additional sum, as interest upon interest.

Subsequently, at chambers, and before the appearance term of the bill, the judge passed the following order:

Felix Lewis  
*vs.*  } In Equity.  
George Hargraves and  
William L. Wynn.

The attorneys in the above case are hereby notified, that the settlement heretofore made will be final and conclusive; as I cannot allow the claim of compound interest, on the ground that equity only looks to the original loan, and requires interest thereon from its date. All the subsequent agreements by way of renewals, were not legal contracts, and are not recognised in equity; only looking back to the original transactions.

(Signed        JOSEPH STURGIS, *Judge.*  
September 6th, 1844.

At the term of the Court following this order, it being the first term after the filing the bill, the following order appears upon the minutes, and was taken and entered in term:

Felix Lewis  
*vs.*  } Bill for injunction.  
George Hargraves and  
William L. Wynn.

The Court having sustained the bill, and the party defendant *having accepted the money tendered,* ordered, that the said bill be sustained and the injunction made perpetual.

Thus this cause stood until the May Term of the Court, 1846; at which time Hargraves moved a *rule nisi,* calling upon the complainant, Lewis, to show cause why his bill should not be dismissed; to which rule, at May Term, 1847, the complainant answered and showed for cause, that his bill was now pending; the same having been finally determined by the orders which I have hereinbefore recited. The Court, after argument had, discharged the rule, and *that* is the judgment to which Hargraves, the plaintiff in error, excepts, and complains that the Court erred in ruling that the orders passed by Judge Sturgis finally disposed of the bill; because said orders are void and of no effect, in this, that the judge of the Superior Court, as chancellor, has no power to grant a final decree in this cause without the intervention of a jury. Thus we have the question presented for the revision of this Court. It involves the validity of these orders, and the extent of the powers of the chancellor in Georgia without the co-operation of a jury.

Hargraves and another *vs.* Lewis.

I shall consider the first two of these orders apart from the [1.] third; and the first remark I make concerning them is, that if they are valid, they operate as a final disposition of the cause; they amount to a final decree. The second is but a supplement to the first, announcing the decision of the judge on a question of interest, which had been reserved for further consideration. It announces the law which, in his judgment, regulated the contract as to interest, about which no question is made in the bill of exceptions, and concerning which, therefore, we are not called upon to express an opinion. The first order directs the money which was tendered in the bill, and which had been deposited with the clerk, to be paid to the attorneys of Hargraves, " *in full payment*" of *his judgment against* Wynn, and if the judge had power to pass such an order at chambers, it extinguished that judgment, granted all which the complainant asked, and precluded Hargraves from all right or opportunity of being further heard. It assumes jurisdiction over the facts in the bill and answer, and adjudicates all the rights of both parties. We do not deny the power of the Court to refuse the motion to dissolve the injunction; or to have dissolved the injunction, or retained it upon terms; to do all this was within the power of the chancellor. Injunctions are subject to his discretion, guided and restrained by certain recognised rules. But we do deny to him the power to decree a perpetual injunction at chambers, before the pleading term had arrived, and of course without the intervention of a jury. In England, the chancellor has vastly more power in this regard than the judge has in this state; there, as a general rule, he has jurisdiction over the law and the facts; there are cases, however, where in England the chancellor cannot try the facts; in such cases the cause is remanded to the courts of law to find the facts, as when the relief sought is properly grantable in damages, and other cases where questions arise purely of matters of fact fit to be tried by a jury. In all such cases, even in England, the chancellor will either wholly decline the jurisdiction, or await the finding of a jury at law. 1 *Story Eq. sec.* 72, 73. We will not say, but that in this case, the chancellor in England could decree all the relief sought without the aid of a jury. But we are not prepared to say, that he could, according to the practice of the English chancery courts, have granted such a decree, at the time and in the manner that this decree was made by Judge Sturgis. Nor do we deny to the chancellor here, the power, controlled by the

rules of the English chancery practice, to pass interlocutory orders. We deny to him the power to make a *final decree* in this cause without the action of the co-ordinate chancery power—the jury. Even if there were no issues of fact growing out of the bill and answer, it would have been regular for a jury to have been impaneled and to have signed the decree, under the direction of the Court. This was necessary, if for nothing else than to preserve the symmetry of our system and the perfectness of the record. Having determined not to dissolve the injunction, the bill ought to have taken the regular course. But there were issues of fact made by this bill and answer, proper to be tried by a jury; issues too, which involved the equity of the complainant, and also the legal rights of the defendant. For example, the bill charges that the note of Pierce Lewis and John L. Lewis with Wynn as indorser, was given at the instance of Hargraves, and in extinguishment of the note of the complainant in his hands for the same debt; and the answer denies that the note of Pierce and John L. Lewis was given at the instance of Hargraves, and in extinguishment of the note of complainant; but represents the facts to be, that they proposed their own note in lieu of complainant's, which proposition was accepted, and complainant's note not cancelled but delivered to them. The bill charges a contract, by virtue of which they, with the consent of the complainant and Hargraves, extinguish this note; whereas the answer represents them as purchasers of that note, holding it still, from aught that appears, and upon which the complainant would be liable to them—not for usurious interest however. If this be the truth of the case, then there is no equity in the bill; for if the complainant could at all times (as he unquestionably could,) defend himself at law against the usury in his note in the hands of these purchasers or any body else claiming under them, then he has no right to come into equity to enjoin Wynn from paying and Hargraves from collecting this judgment for his protection from a right of recovery, which Wynn would thereby have against him. As to these acts then, Mr. Hargraves had a right to be heard before a jury. He had not his day in court. Judge Sturgis not only refused to dissolve the injunction which arrested the enforcement of his judgment lien, but took it upon himself *against the answer*, to determine a conflict of facts in favour of the complainant. This was virtually an attempt to open a judgment at law to let in a defence of usury. The presiding judge did open it, and determine without a jury how much was

Hargraves and another *vs.* Lewis.

due to the plaintiff upon the contract; that is, he determined how much abatement should be made on the judgment because of usury. This he did, by ordering the money tendered to be received by Hargraves, *in full satisfaction* of his judgment. This he did at chambers, and by a *summary order.* Here was an assumption of authority which belongs not to the judge, wholly in conflict with our chancery system, contrary to the usages of the courts, and dangerous in the extreme.

Again, if there is any equity in this bill, it is founded on this [2.] proposition, to wit: *a surety upon a note tainted with usury, and who is cognizant of the taint, is sued by the holder; he not only fails to plead the usury, but, (as this bill charges,) fraudulently colludes with the plaintiff to confess judgment for the principal, and legal and usurious interest, and on paying the judgment, can recover from his principal the usurious interest.* We express no opinion upon the question whether this bill does not come too late, whether it was not necessary for the complainant to have invoked the aid of a court of chancery before this judgment was rendered against Wynn. It renders no excuse why its aid was not sooner invoked. If the proposition stated be true, we are not prepared to say, that in the case made, he is not entitled to relief. But we do not admit that it is true, and in a case analagous to this, the majority of this Court have determined against it. *Whitehead* vs. *Peck,* 1 *Kelly* 140. It is true as a general rule, that if one person is surety for another, and compellable to pay the whole debt, and he is called on to pay, it is money paid to the use of the principal debtor, and may be recovered in an action against him for money paid on his account. The rule is not without its exceptions, and this case makes one. These persons being, as we learn from the bill itself, sureties for the complainant on a usurious note, were not compellable to pay the interest; as to that, the contract was void by our statute. 1 *Kelly* 135. Felix Lewis had notice of the usury—he might have plead it; it was his duty to have plead it; and, failing to do so, he, after paying the usurious interest, cannot recover it out of his principal. *Blydenburg* 102; *Cro. Eliz.* 588; 8 *Leon.* 63; *Noy.* 73; *Dana* 362.

It may be said that payment by Wynn in this case under process, and not voluntarily, makes a difference. How can this be, when it is charged in the bill that he confessed judgment by collusion with the plaintiff, in order to charge the complainants? This fraudulent collusion makes a stronger case against him than it would have been had he voluntarily paid the usury. This charge of collusion

has greatly weakened the equity of the bill. If then I am right in this view of the proposition stated, the defendant Hargraves was entitled to avail himself of it in defence. Of that right he was ousted by the final decree in chambers.

Upon the motion to dissolve the injunction in chambers upon the filing of the answer, what question was before the chancellor? None other than the dissolution or retaining the injunction, and that depended alone upon the question whether the equity of the bill was sworn off, by a sufficient denial of the facts stated in it. The question as to the liability over of Felix Lewis to Wynn, was not, could not have been made. *That* arises from a concession and not a denial of facts. That would have been regularly made by demurrer, or upon motion to dismiss for want of equity. The orders of the judge *closed at once* the whole litigation, and precluded the defendant from the exercise of his right of demurrer. He was not compelled to demur until the first term of the bill. By the third of our Rules in Equity, *(Hotchk.* 953,) a plea or demurrer shall be filed at the return term, unless the court shall grant further time for filing them. The defendant may demur, plead and answer at the same time at the first term, and they are to be separately disposed of in their order, but the filing of the plea or answer, shall in no case operate to overrule the demurrer.

The fourth rule, *(Hotchk.* 954,) provides that the respondent may file his answer at any time after filing a bill for injunction, and move the judge in chambers for a dissolution. Now, we infer from these rules, that the filing of the answer by the respondent *before* the return term of the bill, and his motion in chambers to dissolve the injunction, did not preclude him from demurring and pleading *at* the return term. But, upon the assumption that the two orders passed by the judge in chambers are valid, operative orders, *he was precluded.* Under these views of this subject, it is the judgment of this Court that those orders were passed without authority, and are void and of none effect.

[3.[ It was at one time a question in Georgia, whether a jury was at all necessary in trials in equity. That is to say, whether the act of 1799, conferring chancery powers on the Superior Courts, did not clothe the judge with the powers of a chancellor in England. I advert to this not for the purpose of discussing the question, but of saying that such a doubt no longer exists—that the usage of the Superior Courts for a long series of years has been, to submit the facts in all trials in equity to a jury, and that this usage has been

sanctioned by repeated acts of the legislature recognising it. I have no doubt but that it had its origin in quite sufficient authority of law. In Georgia the judge and the jury constitute the chancellor.

Having disposed of the orders in chambers by declaring them null, we proceed to inquire into the character and effect of the order passed in the cause at the appearance term. This was claimed to be a decree, by the counsel for the plaintiff in error. We do not so consider it. If we did view it in the light of a decree, we would, for the reasons in part upon which we pronounce the other orders null, declare this null also. It is very brief, and sufficiently informal. It recites that the Court, having sustained the bill, *and the party defendant having accepted the money tendered,* ordered, &c. It was competent for these parties to settle this cause out of court, and to agree that an order disposing of it should be entered upon the minutes of the Court. Such an agreement seems to be shadowed forth in this order; the terms of it are not distinctly stated, but it is stated that the party defendant *had accepted* the money tendered in the bill. Discarding from our consideration the previous orders altogether as wholly void, we infer that this acceptance was voluntary, and that there was a settlement between the parties, and that this order is the evidence of it. We infer likewise, as the Court had the power to enter such a settlement in term, upon the minutes, that it was regularly made; and if so, this was a final disposition of the cause.

Let the judgment of the Court below be affirmed.