26899. RANDOLPH *v.* MERCHANTS AND MECHANICS BANKING AND LOAN COMPANY *et al.*

DECIDED OCTOBER 31, 1938.

*David Gershon,* for plaintiff.

*Kennedy, Campbell & Therrell,* for defendants.

SUTTON, J. John T. Randolph brought suit for damages against Merchants & Mechanics Banking & Loan Company and Atlanta Title & Trust Company, jointly and severally, in two counts. In the first count he alleged that he was, and had been since 1919, the owner of a lot of land in Atlanta, Georgia, at the northwest corner of Simpson and Newport Streets, fronting fifty feet on Simpson Street and one hundred and twenty feet on Newport Street; that the bank owned the lot on Newport Street which adjoins the rear of the plaintiff's lot; that the house which is on the defendant bank's lot was built thereon by one McCurry, a predecessor in title of said defendant, who, in building said house, had deliberately encroached on the plaintiff's lot to the extent of an area of 8x50 feet; that said McCurry, shortly before building the said house, had bought the Newport Street lot in the rear of plaintiff's lot from one Langley, having the title to said lot guaranteed by the defendant title company at the time of purchase; that although the deeds on record in the office of the clerk of the superior court of Fulton County, wherein the land was located, showed clearly that the 8x50 foot strip belonged to the plaintiff, and that Langley had never owned or had any color of title thereto, the title company, as a result of a careless and negligent search by it of said records, guaranteed that by virtue of the conveyance from Langley, McCurry got good title to the Newport Street lot,

including the 8x50 strip which belonged to the plaintiff; that Mc-Curry gave the defendant bank a loan deed to the Newport Street property, purporting to convey to said loan company or bank legal title to plaintiff's 8x50 foot strip; that the defendant title company issued to said loan company or bank a policy guaranteeing title to the lot, including plaintiff's said 8x50 foot strip, which the title company knew, or by the exercise of reasonable care should have known, was the absolute property of the plaintiff; that subsequently McCurry conveyed her interest in the Newport Street property to one Watson, who in turn gave a loan deed thereto to the defendant loan company; that on this occasion the defendant title company again issued to the defendant loan company a title policy guaranteeing title to the Newport Street lot, including the 8x50 foot strip which was plaintiff's absolute property and to which neither Watson nor his predecessors in title nor the defendant loan company ever had any title or right whatsoever; that the issuance by the title company of the several above-mentioned policies, in which it guaranteed title to plaintiff's strip of land into persons never having or acquiring title thereto, was due to a negligent and careless search of the records of said title company, the records of the clerk of the superior court showing that during all the time in question title to said strip of land was absolutely in the plaintiff; that in each of said title policies the title company covenanted and .agreed to defend all actions of ejectment founded on a claim of title existing prior to the issuance of the policy; that on February 13, 1931, while the defendant loan company held title to the house on Newport Street as security for the debt due it by Watson, the plaintiff filed in the superior court of Fulton County an ejectment suit to recover possession of said 8x50 foot strip, said suit naming Watson, who was in possession of the Newport Street house, as defendant therein; that immediately on being served with said suit Watson turned the papers over to defendant loan company for it to do as it saw fit, inasmuch as it held legal title to the Newport Street house, and inasmuch as Watson was about to lose whatever equity he had in the same because of his inability to keep up the payments thereon, and for this reason he had no financial interest in the outcome of the ejectment suit; that shortly after the ejectment suit was filed the defendant loan company went into actual possession of the Newport, Street property and foreclosed on Watson,

and it has been in possession of said property ever since; that the defendant loan company turned the papers in said ejectment suit over to the defendant title company to defend, the title company having an interest to protect in the ejectment suit by virtue of having issued the several aforementioned policies, the covenants of which bound it to assume, as it did assume, the defense of said ejectment suit, the defense therein being filed and handled by attorneys who were retained and paid by the defendant title company, the said attorneys acting for and on behalf of both the title company and the loan company; that Watson took no part in the defense of said suit, was not represented therein by said attorneys or any one else, had no control whatever over the conduct of said defense, and was not permitted by the defendants or by their attorneys to exercise any control whatever over said attorneys or the defense of said suit, the defense of which was conducted by the title company and the loan company for their own benefit to protect their respective interests in said suit, the defense being conducted by them openly and with the knowledge of the plaintiff.

In said ejectment suit judgment was rendered in favor of the plaintiff for the land in question on March 13, 1935; that no motion for a new trial, appeal, or exception of any kind was filed in said case, and both the defendants in the present suit were bound by the judgment therein; that after said judgment plaintiff called upon defendant loan company to move its house off of his land, but was requested by the attorneys representing both defendants to withhold enforcement of the writ of ejectment, which had been issued in said case, in order to give an opportunity to move said house, and plaintiff did withhold enforcement of said writ for over two months, thus giving the defendants ample time to move the said house off of his land, but plaintiff in no way waived his right to the possession and enjoyment of said land or any other rights which he might have in the premises; that, in order to annoy and harass plaintiff and keep him out of possession of the 8x50 strip to which they already admitted plaintiff had legal title, the defendants did together file on May 15, 1935, in the name of the defendant loan company, a suit in equity in which they sought to have plaintiff enjoined from interfering with the use and occupancy by the loan company of the said strip and to compel plaintiff to convey said land to the loan company for a consideration of $50, and, in order

to influence the court to grant the injunction, defendants made certain materially false allegations under oath in their petition, and introduced in support thereof on the interlocutory hearing of said case false affidavits prepared by the defendants and known to them to be false, said affidavits being in regard to material matters in said case; that the making of said false affidavits and the preparation and use in evidence of the same were done by the defendants in bad faith and for the purpose of annoying and harassing plaintiff, keeping him out of possession of his property and themselves retaining possession thereof without compensating him therefor, the defendants using said false allegations and false affidavits to influence the court to grant the injunction, defendants not offering to pay plaintiff anything for the use of his land for the time subsequent to the verdict and judgment rendered in his favor on March 13, 1935; that upon presentation of the petition containing the said false allegations and the introduction in evidence of the said false affidavits before the court, the court granted a temporary injunction, restraining plaintiff from going into possession of his land which had already been adjudicated to be his in the aforementioned ejectment suit by which both defendants were bound; that in order to protect his property and his rights therein, in the face of the injunction, plaintiff was forced to retain counsel to file exceptions to the Supreme Court, which court did, on January 16, 1936, reverse the judgment of the superior court granting the injunction against the plaintiff; that the continued trespass by the defendants on plaintiff's land and the continued withholding thereof from him after the judgment in the said ejectment suit were wilful, wrongful, and done in bad faith, and the same was made possible by virtue of the injunction which the defendants had obtained in the manner above set out, and as a result of such action by the defendants the plaintiff has been damaged in a specified amount; that the recited acts of the defendants were done in bad faith and caused the plaintiff unnecessary trouble and expense, and because of such aggravated circumstances defendants should be required to pay plaintiff punitive damages.

The second count of the petition set forth substantially the same allegations as in the first count, and further alleged that in bringing their suit in equity, in which they sought to have themselves not bound by the verdict and judgment in the said ejectment suit,

defended entirely and completely by them, and in making the described false affidavits and introducing the same in said equity suit, the defendants were acting in bad faith and were being stubbornly litigious; that in bringing said equity suit, in which they had had an opportunity to put up and did put up every defense they had, in forcing plaintiff to again litigate over the same issues and to go to the Supreme Court to protect the rights which he had won in the ejectment suit, from which defendants had filed no appeal, defendants caused plaintiff unnecessary trouble and expense; and that because of the facts alleged in count two plaintiff is entitled to recover from defendants the expense of attorney's fees incurred by him in the defense of the said equity suit, both in the superior court and in the Supreme Court. Each of the defendants filed a general demurrer to the petition, and the exception is to the sustaining of the demurrers.

1. The petition contains allegations which are appropriate to an action for malicious use of civil process, but it is lacking in that respect in one of the essential elements, namely, that the equity suit, which is alleged as having been wrongfully instituted, terminated in favor of the defendants therein. The plaintiff contends that the necessary element is to be found in the allegation that the injunction granted in the equity case was set aside on appeal to the Supreme Court. From the allegations of the petition it is made to appear that in that suit it was sought to have the court decree a forced sale of the 8x50 foot strip, and to obtain an interlocutory injunction. The court granted an injunction, and the Supreme Court reversed the grant; but we can not say from the record that the full suit has finally terminated. So far as we are informed, the defendants might have amended the suit, and it may still be undisposed of. It is true that the Supreme Court, in reaching its decision on the merits of the injunction, was guided by its opinion that the decree of title sought to the 8x50 foot strip could not be made by the court of equity, the Supreme Court saying: "We know of no rule of law which permits a court of equity to take the property of another and value it, and allow a trespasser to pay such amount as the court may fix as damages to one he has injured by erecting a building on his property." It necessarily followed that if there was no merit, as shown by the pleadings and the evidence, in the attempt to enforce a sale, it was improper for

the equity court to grant an injunction. But, merely because it appears that the effort to enforce a sale of the 8x50 foot strip was doomed to failure, the decision of the Supreme Court did not necessarily end the litigation in that respect. The question of an injunction was settled, but it is not shown by the record that the equity suit, as respects the sale of the 8x50 foot strip, however hopeless it might appear, has in fact terminated in favor of the defendant therein. Consequently no cause of action for malicious use of civil process is set out in the first count of the petition. Indeed, counsel for the plaintiff state in their brief that such a cause of action is not relied on for recovery, but they contend that the petition sets out a cause of action for trespass, and that the allegations appropriate to a suit for malicious use of civil process merely illustrate the trespass. We do not think trespass is set out. While it is true that the ejectment suit settled the question of title to the 8x50 foot strip, and it was thereupon incumbent on the defendants to surrender possession, it is made to appear that the defendants' possession to the time of the interlocutory injunction was a permissive one. It is alleged that the plaintiff "was requested by the attorneys representing both defendants to withhold enforcement of the writ of ejectment which had been issued in said case, in order to give an opportunity to move said house," and that he did withhold enforcement for over two months, "thus giving the defendants ample time to move the said house off his land," but that the plaintiff in no way waived his right to the possession and enjoyment of. said land or any other rights which he might have in the premises. Construing the petition most strongly against the pleader, as must be done on general demurrer, it must be held that under the above-mentioned allegations the possession by defendants was permissive from March 13, 1935, the date of the judgment in the ejectment suit, until May 15, 1935, when the equity suit was instituted, "over two months," the period of time the pleader says the enforcement of the writ was withheld.

It is, however, contended that regardless of the writ the defendants were bound in law to vacate, and that the mere withholding of its enforcement did not relieve the defendants from the guilt of trespass. The judgment in the ejectment suit, it is true, required of itself that the defendants surrender possession; and if the petition had been silent as to the non-enforcement of the writ, trespass

would have been shown; but the petition having alleged that the plaintiff was requested to withhold enforcement of the writ to give defendants an opportunity to remove the house, the only reasonable construction to be placed thereon is that they were to be regarded as licensees and not trespassers for the time being. Nor can the nature of the occupancy be affected by the fact that, instead of removing the house, the defendants caused to be filed a petition in equity to forestall the rights of the plaintiff. Neither was the occupancy from the date of the injunction a trespass. However fraudulent the conduct of the defendants may have been, as is now alleged, the order of the court, until reversed or set aside, constituted sufficient authority for the retention of possession. It appears that the judgment of the Supreme Court reversing the grant of the injunction was rendered on January 16, 1936, that a motion for rehearing was denied on February 21, 1936, and that the defendants actually removed the house from the 8x50 foot strip on March 10, 1936. Although the order of the trial court protected the defendants in their possession of the strip until the defendants could remove the house within a reasonable time after the judgment of reversal, and the making of such judgment of reversal the judgment of the trial court (which removal appears to have been accomplished within a reasonable time), we do not mean to say that, where fraud in the procurement of the injunction is made to appear, the plaintiff could not maintain an action for malicious use of civil process if the three essential elements of such an action exist, namely, malice, want of probable cause, and termination of the suit favorably to the defendant therein, notwithstanding that as to the retained possession it was authorized by the court order. But, as hereinbefore set out, the element of termination of such a suit is wholly lacking in the present instance, and no trespass is shown; and consequently the court properly sustained the general demurrers of the defendants as to count 1 of the petition.

2. In the second count recovery is sought only for attorney's fees incurred in the equity suit which is alleged to have been wrongfully instituted by both defendants, acting in bad faith and being stubbornly litigious. Code, § 20-1404, declares: "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and ex-

pense, the jury may allow them." But, as we have shown above, it is not made to appear that the equity suit has terminated favorably to the defendant therein, the plaintiff in error in the present suit; and consequently there is no basis for the award of attorney's fees. As was said in *Fender* v. *Ramsey*, 131 *Ga.* 440, 443 (62 S. E. 527), "There is no law by which every case brought by a plaintiff can be turned into a damage suit by the defendant against the plaintiff for bringing it, while it is still pending." Moreover, Code, § 20-1404, invoked by the plaintiff in error, is not applicable to a case where the attorney's fees asked for do not arise out of a present suit, but are part of another legal proceeding. *A. C. L. R. Co.* v. *Nellwood Lumber Co.*, 21 *Ga. App.* 209, 216 (94 S. E. 86) ; *Talmadge* v. *McDonald*, 44 *Ga. App.* 728, 735 (162 S. E. 856). It follows that as to count 2 of the petition the court did not err in sustaining the general demurrers.

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., dissents.*