GEORGIA VENEER & PACKAGE COMPANY *et al.* v.
FLORIDA NATIONAL BANK *et al.,* executors.
FLORIDA NATIONAL BANK *et al.,* executors, *v.* GEORGIA
VENEER & PACKAGE COMPANY *et al.; et vice versa.*

592

Nos. 14957, 14964, 14968.  October 13, 1944.  Rehearing denied November 22, 1944, December 4, 1944.

*Reese, Scarlett, Bennet & Gilbert,* for Georgia Veneer & Package Company et al.

*Conyers, Gowen & Conyers, MacDougald, Troutman & Arkwright,* and *Harllee Branch Jr.,* for Florida National Bank et al.

DUCKWORTH, Justice. ■ The motion to dismiss the writ of error in case No. 14957 and docket the same as a cross-bill in case No. 14964 must be denied, but in view of the unusual condition of the case it is thought well to set forth the reasons which require a denial of the motion. In so far as it is sought to have the writ of error treated as a cross-bill, the insurmountable obstacle is, that this writ of error was signed by the trial judge on June 3, 1944, and filed in this court on June 24, 1944, whereas the writ of error in case No. 14964 was presented to and signed by the trial judge on June 19, 1944, and filed in this court on July 3, 1944. Therefore, there was no writ of error in the trial court or in this court to which the writ of error in case No. 14957 could have, at the time of its approval and filing, been made a cross-bill of exceptions. It can not be so treated now. *Sumner* v. *Sumner,* 121 *Ga.* 1, 5 (48 S. E. 727).

With reference to the grounds of the motion which assert that the plaintiffs in error are estopped from excepting to the final judg-

ment of dismissal since it was rendered at their instance, this contention would be sound if the only question involved was an exception to this final judgment. Certainly a party will not be allowed, in the absence of circumstances which will later be discussed, to complain of a judgment of the trial court rendered on his motion, but in this case error is assigned on the final judgment solely because of an alleged erroneous antecedent ruling dismissing an amendment. It is freely admitted here that at the time the final judgment was entered it was the only judgment, as the case then stood, which could properly have been rendered by the trial court. This writ of error seeks a review of that judgment to the extent only that it is contended that the antecedent ruling, which is also excepted to in this writ of error, renders the final judgment erroneous. The antecedent ruling deprived the plaintiffs in error of the right to prosecute a counterclaim, and that ruling was excepted to pendente lite. It would be an unsound and unjust rule of law that would impose upon the defendants the burden of thereafter procuring a final judgment adverse to their interests in the remaining portions of the case as a condition precedent to a review of the antecedent ruling. Such a ruling would at once place in the hands of the opposite party the power to deprive the plaintiffs in error, the defendants in the trial court, of a review of that antecedent ruling. It happens in the present case that the petitioners below by writ of error except to the final judgment which was adverse to them. They had not done so at the time the writ of error in case No. 14957 was sued out, and, in so far as the defendants below could know, they might never have excepted to that judgment. The exceptions in this writ of error, in the sense that a direct bill of exceptions was brought by the losing party, might properly have been made in a cross-bill, but we must consider the motion to dismiss as if the losing party had not excepted, for we are dealing with a vital question or rule of procedure. That rule must apply alike in cases where the losing party thus excepts and where the losing party does not except to the final judgment. There is an abundance of authority for the rule that a final judgment is reviewable by general exception in so far as it is affected by antecedent rulings which are properly excepted to in the same writ of error. *Lyndon* v. *Georgia Railway & Electric Co.,* 129 *Ga.* 353 (3) (58 S. E. 1047); *Rabhan* v. *Rabhan,* 185 *Ga.* 355 (195 S.

E. 193); *Cheatham* v. *Palmer,* 191.*Ga.* 617 (1 a) (13 S. E. 2d, 674). That rule is applicable here. Although dissatisfied with the antecedent ruling, the defendants below were not required to wait for an adverse judgment on the remaining issues in the case in order to have reviewed the antecedent ruling, but are allowed to except, as is done here, to a favorable judgment. Their rights as embodied in the pleadings stricken by that ruling were thereby taken out of the case. They were entitled thereafter to seek full protection of all other rights remaining in the case, and by doing so they did not forfeit the right to a review of the previous ruling. They do not in this court retreat one iota from the position assumed in the trial court that the final judgment of dismissal was the only proper judgment that could be rendered in the state of the pleadings at that time. For the reasons stated, the motion to dismiss the writ of error is denied, and the motion to treat the same as a cross-bill is also denied.

■ The record in this case simply precludes any relief sought by the defendants' amendment of November 8, 1943. The basis upon which that relief is sought is the alleged malicious use of civil process by the petitioners in the institution and prosecution of the case then pending, and to which the amendment was proposed as a part of the defendants' defense. In the first place, the law is in‑ flexible in its specific requirement that in an action for damages for the malicious use of civil process three essential elements must appear, to wit: (1) Malice. (2) Want of probable cause. (3) The proceeding complained of has terminated in favor of the defendants before an action for damages is instituted. *Wilcox* v. *McKenzie,* 75 *Ga.* 73; *Georgia Loan & Trust Co.* v. *Johnston,* 116 *Ga.* 628 (43 S. E. 27); *Fender* v. *Ramsey,* 131 *Ga.* 440 (62 S. E. 527); *Ellis* v. *Millen Hotel Co.,* 192 *Ga.* 66 (14 S. E. 2d, 565); *Marshall* v. *Armour Fertilizer Works,* 24 *Ga. App.* 402 (5) (100 S. E. 766); *Smith* v. *National Clothing Co.,* 29 *Ga. App.* 421 (116 S. E. 52); *Darnell* v. *Shirley,* 31 *Ga. App.* 764 (122 S. E. 252); *Randolph* v. *Merchants &c. Loan Co.,* 58 *Ga. App.* 566 (199 S. E. 549). There is nothing in the record here to show or intimate that the proceeding complained of was instituted as the result of malice. The two interlocutory injunctions, restraining the defendants as prayed from making a sale of any of their properties and from disbursing any funds except upon proper order of the court, together with

orders of the court specifying the procedure for making a sale and confirmation of sales upon application of the defendants, conclusively refute any contention that there was a want of probable cause. See *Georgia Loan & Trust Co.* v. *Johnston,* supra; *McElreath* v. *Gross,* 23 *Ga. App.* 287 (98 S. E. 190) ; *Marshall* v. *Armour Fertilizer Works,* supra. We have been requested by counsel for the defendants to review and overrule *Short* v. *Spragins,* 104 *Ga.* 628 (30 S. E. 810). However, that case is not applicable here, and the request to overrule is denied. The record compels the conclusion that, instead of there having been a termination in favor of the defendants as required by the rule, there has been some termination in favor of the petitioners. It thus appears that the amendment proffered met none of the three essential conditions which the law requires as prerequisites to the recovery there sought.

But it is contended in the brief of counsel for the plaintiffs in error on this issue that they should have been allowed to prosecute the claim made by the cross-action for the following reasons: (1) The petitioners had brought the main action in violation of the plain terms of the law. Code, § 22-711. (2) The petitioners were non-residents of the State. (3) Since the suit was brought in violation of the law, the court was without jurisdiction ab initio, and, hence, everything done before the defendants' cross action was filed was nugatory, and this pleading alone gave de jure jurisdiction, whereas the court's jurisdiction previously was merely de facto. As to the first of these contentions, the two proper methods by which to attack the sufficiency of the allegations entitling the petitioners to prosecute their main action would be demurrer or motion to strike. Though it is inferable from the brief of counsel that a general demurrer was originally filed, it appears, from the recitals in the demurrer filed on December 1, 1943, to the petitioners' amendment seeking allowance of expenses and counsel fees that the former demurrer was withdrawn, the latter reciting: "Come now" the defendants "and formally withdrawing without prejudice their demurrer which has not been acted upon, heretofore filed to plaintiffs' original petition," etc. It does not appear that this general demurrer was ever reinstated and insisted upon, and the demurrer to the petitioners' amendment makes it plain that the defendants were not demurring to the petition as amended. Special demurrers were filed to the amendment, but it related only to

the allowance of expenses and counsel fees, a request for which might have been made even by oral motion, and anything found in the demurrers questioning the right of the petitioners to bring the main action can not, in view of the disclaimer that the petition as amended was demurred to, amount to an attack on the petition in the main action.

The defendants, in their answer to the rule to show cause why the prayers of the original petition should not be granted, did originally contest the right of the petitioners to maintain the action. The interlocutory order of September 20, 1943, provided that it was not to be construed as final as requiring, in case of objection, the tender of a bill of exceptions within twenty days. In that respect the court was without authority, as recognized by the defendants in their brief of counsel, to extend the time within which a bill of exceptions might be brought to this court assigning error on such order. The defendants might, within the statutory time, have brought such a bill of exceptions to this court. They elected not to do so. Under this order, the court expressly retained jurisdiction to enter such other and further orders as it might deem meet and proper, and, in the event no sale be consummated, to give such further directions as might be meet and proper in the circumstances of the case. On October 12, 1943, the court enjoined the defendants from paying out, except for named purposes, any funds realized from the sale of assets or otherwise. The defendants did not except to this order, but on December 2, 1943, filed a motion to set it aside. The court overruled the motion, but modified the order so as to permit payment of debts and a distribution of $120 per share to stockholders. The defendants did not except to this order. On April 14, 1944, the court, in the exercise of its retained jurisdiction, and upon a motion filed by the defendants on April 3, 1944, further modified the order of October 12, 1943, so as to permit a payment of $10 per share to stockholders out of funds on hand. These two last-named orders were agreed upon by the parties "without prejudice." In the meantime, the defendants, under and recognizing the restraint still imposed upon them, had petitioned the court to approve a proposed sale of the corporate assets, and these sales had been allowed by the court upon its determination of just and proper consideration for the assets. So, notwithstanding the issue made by the defendants' response to

the rule to show cause, and notwithstanding any order entered without prejudice, and though the interlocutory order of injunction as such was not conclusive on the merits when entered, and though the defendants might have claimed a jury trial just as in a case where a judgment for money was sought and injunction was also prayed for, the record discloses that the defendants made no objection ultimately but yielded to the administration of the assets by the court on the allegation by the petitioners that a sacrifice of the assets was impending, and finally made a motion to dismiss the case as moot, reciting the prayers of the petitioners and the various acts and doings of the corporation under the supervision and control of the court in a manner analogous to that of a receivership. Thus by their acts and conduct they did not persist in the issue made by their answer, but acquiesced in all the orders and directions of the court and have treated the issues as conclusively settled in favor of the petitioners, and are not now in position to urge in this court any deficiencies in the petition in the main action. As to them, the petition must be treated as conforming to the requirements of the Code, § 22-711. *Peeples* v. *Southern Chemical Corp.,* 194 *Ga.* 388, 392 (21 S. E. 2d, 698), cited and relied on by the defendants, is clearly distinguishable. There the action was dismissed on a motion that no cause of action was alleged. Whether or not an equally satisfactory or better disposition of the corporate assets might have been made in the instant case without the administration by the court, this court is not called upon to determine. The accepted administration by the court has made that question academic. The jurisdiction assumed and the administration thereunder were predicated upon the contention of the petitioners that otherwise the assets would be sacrificed for the wholly inadequate price of $266,500. Their application for allowance of expenses and counsel fees alleges that by their efforts in obtaining such administration the corporation and its stockholders have been benefited to the extent of more than $200,000 above the amount for which the assets were to be sacrificed.

What has just been said applies equally to contention (3) made by the plaintiffs in error. We know of no law, and none has been cited by counsel, which would sustain the second contention to the effect that the non-residence of the petitioners is sufficient to abrogate the rule requiring termination of a suit in favor of the

defendant before an action for malicious use of civil process can be maintained against the party who brings the alleged wrongful suit. Quite the contrary was held in *Werk* v. *Big Bunker Hill Mining Corp.,* 193 *Ga.* 217, 222 (17 S. E. 2d, 825). The amendment, being thus fatally defective, was subject to the general demurrer, and the court did not err in sustaining the petitioners' demurrer and dismissing the amendment.

■ The petitioners in case No. 14964 assign error on the judgment sustaining the defendants' general demurrer to their amendment seeking reimbursement for expenses and allowance of counsel fees. This demurrer attacked the amendment on the ground that it did not appear therefrom that the court appointed a receiver or took any other action seizing any of the property of the corporation or that the court had possession of any res out of which payment might be made to the petitioners or anyone else. It is also contended, under the demurrer and the alleged authority of *Churchill* v. *Bee,* 66 *Ga.* 621, *Alexander* v. *A. & W. P. R. Co.,* 113 *Ga.* 193 (30 S. E. 772, 54 L. R. A. 305), *Wiley* v. *Sparta,* 154 *Ga.* 1 (114 S. E. 45, 25 A. L. R. 1342), and the Code, § 55-314, that, in order for the petitioners to be entitled to expenses and counsel fees as sought by their amendment, it would be necessary for them to obtain a verdict of the jury sustaining the averments of their petition and finding that they had brought money into the court aside from that arising from the sale of property turned over by the defendants; and that, if the petitioners are entitled to such an award, the jury and not the court should fix the amount.

While in the present case no receiver eo nomine was appointed by the court, we think that the action of the court in allowing the assets of the corporation to remain in its physical possession, but subject to the supervision and control of the court pending the termination of the proceeding, was in substance the equivalent of a receivership. The res, in the immediate physical possession of the corporation, was thus held in trust and not in its own right. There is a dearth of specific authority on this question, but in the view above expressed we are supported by *Porter* v. *Stewart,* 163 *Ga.* 655 (137 S. E. 28), where there was presented for decision the right of a petitioning creditor to an allowance by the court of attorney's fees and costs where a fund had been brought into court to which fund intervening creditors made claim. In the final decree the

trial judge awarded expenses, including a counsel fee of $1000, to the petitioner, the moving creditor. Presiding Justice Beck, speaking for the court (page 659), said: "True, no receiver was prayed for or appointed, but the money was paid into the registry of the court, as we have stated; and this was analogous to the appointment of a receiver and the payment over of the funds in question to him. We think that the result obtained by the suit was beneficial to all the parties, that is, to the original plaintiff and the intervenors."

The amendment here involved set out the proceedings that had been had under the orders and supervision of the court pursuant to the action brought by the petitioners on the theory that the assets of the corporation were about to be sacrificed; and that the apprehended sale had been prevented and sale made with the approval and confirmation of the court, it being contended that thus a substantial and real benefit had been conferred upon the corporation and its stockholders, by reason of which expenses and counsel fees should be allowed the petitioners. Generally every litigant must pay his own counsel fees. There are exceptions to this general rule. Where, as a result of the prosecution of an action by minority stockholders, the majority have been prevented from fraudulently sacrificing corporate assets and the court has obtained control of those assets, the petitioners are entitled to an order of the court allowing the payment from the common fund of the necessary expenses and counsel fees incurred by them. The applicable rule is stated in *Eckford* v. *Atlanta,* 173 *Ga.* 650, 652 (2) (160 S. E. 773), as follows: "A court of equity, however, will in its discretion order an allowance of counsel fees to a complainant who at his own expense has maintained a successful suit for the *preservation, protection,* or *increase* of a common fund or *common* property, or who has created at his own expense, or brought into .court, a fund in which others may share with him." (Italics ours.) Supporting this rule, see *Price* v. *Cutts,* 29 *Ga.* 142 (74 Am. D. 52); *Alexander* v. *A. & W. P. R. Co.,* supra; *Peppers* v. *Cauthen,* 143 *Ga.* 229 (2) (84 S. E. 477); *Keating* v. *Fuller,* 151 *Ga.* 66 (105 S. E. 844); *May* v. *Chero-Cola Co.,* 168 *Ga.* 443 (148 S. E. 87); *Greyling Realty Corp.* v. *Lawson,* 179 *Ga.* 188 (175 S. E. 453); *Christian &c. Assn.* v. *Atlanta Trust Co.,* 181 *Ga.* 576, 581 (3) (183 S. E. 551); *United States Fidelity &c. Co.* v. *Clarke,* 187 *Ga.*

774 (2 S. E. 2d, 608); *United States Fidelity &c. Co.* v. *Clarke,* 190 *Ga.* 46 (5) (8 S. E. 2d, 52); *City of Atlanta* v. *Screws,* 194 *Ga.* 214, 216 (21 S. E. 2d, 424); *Nixon* v. *Nixon,* 197 *Ga.* 426 (29 S. E. 2d, 613); *Trustees* v. *Greenough,* 105 U. S. 527 (26 L. ed. 1157); *Central Railroad* v. *Pettus,* 113 U. S. 116 (5 Sup. Ct. 387, 28 L. ed. 915); *Hobbs* v. *McLean,* 117 U. S. 567 (6 Sup. Ct. 870, 29 L. ed. 940). The rule was expressly recognized in *Alexander* v. *A. & W. P. R. Co.,* supra, but expenses and counsel fees were not allowed the petitioning minority stockholders for the two-fold reason, that (1) the action was predicated upon the individual right of the petitioners and not that of the corporation, and (2) no common fund of the corporation was brought under the control of the court. In *Porter* v. *Stewart,* supra, this court quoted approvingly from the Federal case, *Hobbs* v. *McLean,* supra, as follows: "When many persons have a common interest in a trust property or fund, and one of them, for the benefit of all and at his own cost and expense, brings a suit for its preservation or administration, the court of equity in which the suit is brought will order that the plaintiff be reimbursed his outlay from the property of the trust, or by proportional contribution from those who accept the benefits of his efforts." If in fact a sacrifice of the assets of the corporation was averted by the efforts of the petitioners, they would, under the authorities above cited, be entitled to expenses and attorney's fees no less than if they had brought into court an amount of money equal to the alleged savings.

The question is also presented whether or not in the exercise of his discretion the trial judge in the present equity case, rather than the jury, shall determine and fix the amount of expenses and counsel fees sought by the petitioners under their allegation that the prosecution of the suit has resulted in bringing the assets of the corporation into the control of the court and in benefitting the corporation and its stockholders. While the law provides that in equity cases the jury may recommend to the court the assessment of costs, yet it is the exclusive province and duty of the trial judge in the exercise of a sound discretion to determine upon whom the costs shall fall. Code, § 37-1105. The action of the judge in thus fixing the costs will not be disturbed unless there is an abuse of discretion. *Ross* v. *Stokes,* 64 *Ga.* 758; *Wrenn* v. *Atlanta Trust Co.,* 187 *Ga.* 663 (2) (2 S. E. 2d, 67); *Fitzgerald* v. *Vaughn,* 189

*Ga.* 707 (7 S. E. 2d, 78); *United States Fidelity &c. Co.* v. *Clarke,* 190 *Ga.* 46; *Mendenhall* v. *Stovall,* 191 *Ga.* 452 (12 S. E. 2d, 589); *Sangster* v. *Toledo Manufacturing Co.,* 193 *Ga.* 685 (19 S. E. 2d, 723). The provision of the statute that in an equity case the presiding judge shall determine upon whom the costs shall fall, while not in terms including the right to fix expenses and counsel fees, shows a clear recognition by the legislature of the power existing in the chancellor, as under the old English practice, to do in an equity case what could not be done by the presiding judge in a case at law, thus relaxing the rule found in the Code, § 24-3401, that, "In all civil cases in any of the courts, except as otherwise provided, the party who shall discontinue, fail, or be cast in such suit shall be liable for the costs thereof." Upon this principle of equity power, this court has ruled that the right to fix counsel fees, no less than statutory costs, in an equity case resides in the chancellor and not in the jury. In *Werner* v. *Werner,* 196 *Ga.* 1 (25 S. E. 2d, 676, 146 A. L. R. 1263), it was held that the trial judge erred in refusing to consider the application of the petitioner for the payment of his counsel fees from the common fund. At page 6 in the opinion, after stating that the Code does not in terms provide for the payment of fees to counsel for the plaintiffs in an equitable partition proceeding, it was said: "But this failure can not be taken as a denial of the general power of the chancellor to make an allowance of fees out of the common fund to the attorney for plaintiffs in an equity case, whether the case be one for partition of land or for the administration of a fund for the benefit of more than a single creditor." In the headnote, it is stated that "the judge of the superior court before whom the same [an equitable partition proceeding] is pending has the power under general equitable doctrine, in a proper case and where the circumstances justify it, to allow compensation for the plaintiff's counsel as a charge against the fund arising from the sale of the land partitioned." In *Nixon* v. *Nixon,* supra, the authority of the trial judge in equity cases to allow counsel fees is recognized and emphasized. It, therefore, can not now be said to be an open question in this State as to whether or not the judge in a proper case in equity is authorized to direct payment from a common fund of counsel fees and expenses of the petitioners who bring such property or funds under the control of the court. To grant relief in such cases is the exclusive function

of the trial judge, with which the jury is not concerned. It follows that the attack in the present case upon the application of the petitioners for expenses and counsel fees, on the ground that the application sought an order from the trial judge without submitting the matter to the jury, is without merit. While there is language in the opinion in *Churchill* v. *Bee,* supra, relied on by the defendants to support their contention that the allowance can be made only after a finding by the jury, it must be regarded as obiter, since there the presiding judge made the award and this court ruled that, as it appeared to be reasonable, it would not be reversed. If we are wrong in the appraisal of this language and it is to be regarded as a necessary ruling in the case, it is the opinion of five members of this court that such a statement of law in an equity case should be and it is hereby expressly disapproved. See the Code, § 6-1611.

Counsel for the defendants cite and rely upon *McWilliams* v. *Boswell,* 145 *Ga.* 192 (88 S. E. 821), as conclusively showing that such question should be submitted to the jury. That decision, however, is clearly distinguishable. There, during the pendency of a trover action, a petition for injunction and receivership, involving the subject-matter of the trover action, was brought by the plaintiff in trover. When the injunction case came on for trial, it appeared from an inspection of the record by the court that the trover action had terminated and had resulted in a verdict and judgment for the plaintiff, and thereupon the court announced that there was no issue left for trial and entered a judgment against the defendant in the injunction and receivership suit for the costs of court. However, the pleadings in that suit showed an issue of fact between the parties as to the right of the defendant to retain the use of the subject-matter of the suit, a sawmill outfit, though title was in the plaintiff. Thus the defendant was contesting throughout the proceeding the right of the plaintiff to maintain the suit, and her plea had been undisposed of. Whether or not the defendant was entitled to the possession of the sawmill outfit, was a question for determination by the jury, and, in the absence of a finding adversely to her, the costs of the injunction and receivership suit were erroneously and prematurely assessed against her.

It is, of course, the law that the trial judge is not authorized in any equity case to award counsel fees to petitioners where the prosecution of the action has not benefited the corporation or others in-

terested in the fund which is brought under the control of the court. *Mohr-Weil Lumber Co.* v. *Russell,* 109 *Ga.* 579 (2) (34 S. E. 1005); *Buckwalter* v. *Whipple,* 115 *Ga.* 484 (3) (41 S. E. 1010); *Stovall* v. *Mendenhall,* 192 *Ga.* 796 (4) (16 S. E. 2d, 546). While the exception here does not present the question whether or not the facts in the case entitle the petitioners to the payment of expenses and counsel fees from the assets of the corporation, it does present the question whether or not the application alleged sufficient facts to require the trial judge to consider the merits of the application. It does allege that by prosecuting the action the petitioners have prevented a sale of the corporate assets for the depressed sum of $266,500, and that the administration by the court, invoked by the petitioners, has resulted in obtaining a much greater sum for the corporate assets than that for which it was alleged the assets were about to be sacrificed. The application, together with the record in the case, makes a case requiring the determination by the trial judge of the merits. It was error, therefore, to sustain the demurrer to the application and to dismiss the same. This renders the subsequent judgment dismissing the entire case, upon the ground that all questions had become moot, erroneous also.

*Judgment affirmed on bill of exceptions in case No. 14957 and cross-bill of exceptions in case No. 14968; and judgment reversed on main bill of exceptions in case No. 14964. All the Justices concur, except*

JENKINS, Presiding Justice, dissenting. I dissent from headnote three and the corresponding division of the opinion, and think that the court was correct in sustaining the demurrer to the amendment to the plaintiffs' petition seeking attorneys' fees and expenses incurred. Despite the fact that my more learned colleagues hold, as I construe the opinion, that the allegations of the amendment to the plaintiffs' petition raise an issue for the judge to properly determine as to whether the plaintiffs had saved a designated large sum to the corporate assets by virtue of their equitable proceeding, I am unable to agree either that the record shows that the issues made by such amendment to the petition have been already foreclosed in their favor or that the amendment presents such an issue as can be properly determined by the judge. This court has not held that the issue is foreclosed by the record, but does hold that the amendment presents the plaintiffs' contention for determination

by "the trial judge of the merits." In my opinion, since the controlling issue has not already been determined, only a jury, as pointed out by the demurrer, can adjudicate the issue. Whether such an alleged saving to the corporation has been effected by virtue of the plaintiffs' efforts appears to be the one outstanding, undetermined, and unadjudicated issue in the case. Although there appears to be no difference between what is held in the opinion and the view of the writer of this dissent on the proposition that the controlling issue has not been foreclosed in favor of the plaintiffs, since, if it had been, the judge might properly assess fees, I deem it not improper to revert, in passing, to that question. As I see it, while the counterclaim by the defendants for damages for malicious use of legal process was not maintainable for the reason that the litigation had not been finally terminated in the defendants' favor (*Baldwin* v. *Davis,* 188 *Ga.* 587, 588, 4 S. E. 2d, 458), and this would be true even though the orders actually taken in the main case might have been taken without prejudice, I am also convinced that the orders actually taken did not amount to a legal adjudication that the allegations of the original petition with respect to the fraudulent intent and purpose of the directors to sacrifice the corporate assets by the alleged threatened sale were true. Nor did the defendants' consent to the court's approval of the sale, as finally effected by the directors and confirmed by the court, have such legal effect. The directors, seeking to serve the interest of the stockholders in quickly liquidating the corporation whose functions could be further continued only at great loss and sacrifice, might well have wished to thus avoid the continued delay of protracted litigation; and, in failing to except to the continuance of the order requiring confirmation of any sale as made by the directors, might well at one time have reached the decision that, in view of the accusations of the petition and the action of the court in refusing a receiver and in permitting the directors to retain the management and power of sale in their hands, they were content to have their actions confirmed by the court. Even had the judge specifically held—which he did not do even by indirection—that the allegations of the petition were true, even then, his findings on such facts would not constitute the law of the case. *Albany Theatre* v. *Short,* 173 *Ga.* 121 (159 S. E. 688); *Voyles* v. *Carr,* 173 *Ga.* 627 (3) (160 S. E. 801); *Reynolds* v. *Calvert Mortgage & Deposit Co.,* 146 *Ga.* 534 (a) (91

S. E. 555). Nor am I able to see that the evidence at the hearing disproved the pleas of the defendants, in which they strenuously denied that the directors had any intent or purpose to enter upon any such contract of sale as was alleged in the petition. On the contrary, the evidence seems to indicate that, whatever may have been the subsequent attitude of one of the directors as to a sale to Tully, any purpose or plan which may have existed on the part of Tully to purchase the assets at the price charged, or at any price, had been openly and wholly abandoned by Tully at the stockholders' meeting held on July 28, 1943, at which the plaintiffs were represented; that they were at that time so advised by Tully; that at said stockholders' meeting authority was delegated to the directors to effect a sale, and that at a meeting of the directors, held on the same day, a sale price of $400,000 (not $265,000) was fixed by them, and arrangements were made to solicit bids at said price of $400,000; and that the persons who finally bought at $360,000 (which was satisfactory to the plaintiffs) were procured by the directors under an original offer made to them at the price of $400,-000; that between July 28th and August 10th, on which latter date the *plaintiffs' suit was filed,* the plaintiffs' representative had been advised at least three times by the corporation's president that its properties had been offered to prospective purchasers at a price of $400,000; a letter to which effect from the president to the plaintiffs being in fact attached to their own petition. In fact it appears from an affidavit made on behalf of the plaintiffs that "affiant says that he believes that, had it not been for the action of the minority stockholders *at the stockholders' meeting of July 28th,* all properties and assets of the corporation would have been sold for $266,-500." (Italics mine.) The petition was filed thirteen days after the stockholders' meeting on July 28th, and after the plaintiffs were in possession of all the information stated. It thus appears to the writer that neither by virtue of any action taken by the court or by the defendants, nor by virtue of the evidence contained in the record, can it be said that the charges made in the petition have been sustained in law or in fact.

But, as already stated, it is not the ruling of this court that the record shows that the saving to the corporation, as alleged in the petition, was established. It is plainly held that, because the amendment asking for expenses and fees "alleged" such savings,

the court erred in sustaining the defendants' demurrer. As shown by the statement of facts, the petition prayed "that *the court set a convenient date* on which the matters and things set forth in the amendment may be *inquired of by the court and determined;* and that, after a hearing, *the court order and direct* the payment of attorneys' fees," etc. (Italics mine.) It would thus seem that the amendment cannot properly be construed as asking for a trial by jury on the disputed allegations made in the amendment, but that the prayer was in effect plainly limited to such relief as the court setting and hearing the case might determine to be proper. The opinion clearly takes this view in stating that, "the application, together with the record in this case, thus makes a case requiring the determination by the *trial judge* of the merits." (Italics mine.) In other words, for the purpose of awarding expenses and fees, this court has correctly construed the petition as asking the judge to make himself the trior of this, the only issue of fact made by the original petition and plea which had theretofore remained undetermined. In *Wiley* v. *Sparta,* 154 *Ga.* 1 (4), 23 (supra), this court said: "A decree is the judgment of the judge in equitable proceedings, upon the facts ascertained. Civil Code, § 5424; *Winn* v. *Walker,* 147 *Ga.* 427 (94 S. E. 468). In this State the jury and the judge constitute the chancellor. *Hargraves* v. *Lewis, 3 Ga.* 162. The facts are to be submitted to a jury, who have the exclusive right to pass upon them, and matters of law are for the court alone. This is what is meant by the language of the last-cited case. *Mounce* v. *Byars,* 11 *Ga.* 180." In *Holton* v. *Lankford,* 189 *Ga.* 506, 523 (6 S. E. 2d, 304), this court quoted with approval the language of Judge Nisbet in *Hargraves* v. *Lewis,* supra, as follows: "It was at one time a question in Georgia, whether a jury was at all necessary in trials in equity. That is to say, whether the act of 1799, conferring chancery powers on the superior courts, did not clothe the judge with the powers of a chancellor in England. I advert to this, not for the purpose of discussing the question, but of saying that such a doubt no longer exists—that the usage of the superior courts for a long series of years has been to submit the facts in all trials in equity to a jury, and that this usage has been sanctioned by repeated acts of the legislature recognizing it." But the specific question as here presented was decided in *Churchill* v. *Bee, 66 Ga.* 621 (8) (supra), where the court laid

down the rule in a case like the instant one, as follows: "The amount of fees of counsel for bringing the money into court should be fixed by the jury on proof of the value of the service, and the chancellor on their verdict should decree the payment thereof; but where the chancellor has decreed them without such verdict, and the amount is reasonable, this court will not set aside that decree, especially where the counsel for plaintiff in error declines to press this point here, though made in the bill of exceptions." This ruling cannot, it seems to the writer, be dismissed as mere obiter, because, after enunciating the rule, this court failed, on its own motion, to set aside a decree which was held reasonable in its terms, and which the opposite party declined to attack, but which the court in effect held would have been defective had such attack been made. It is true that since the rendition of the case last cited, the General Assembly has enacted legislation dealing with receivers, and in one portion of this act as embodied in the Code, § 55-314, provides as follows: "In all cases where a receiver shall be appointed under the laws of this State to take charge of the assets of any person, firm or corporation, and a fund shall be brought into court for distribution, the court having jurisdiction thereof shall award to counsel filing the petition and representing the moving creditor or creditors, out of the fund, no greater sum as fees for services rendered in filing such petition and bringing the fund into court than such services shall be actually worth," etc.; but, even had the judge in the instant case not refused to appoint a receiver, and had he appointed one "to take charge of the assets" of the corporation, instead of merely granting an injunction to preserve the status pending a final determination of the issues, except that he provided for a sale subject to the court's approval, even then, the Code section quoted seems to assume that no preliminary issue of fact as to whether the plaintiffs had brought a fund into court would be involved; and it is only where such fact has been adjudicated, or is not disputed, or where the parties consent, that he is authorized to act. However, I feel it is incumbent to say that it is my opinion that a court in its discretion can, even where no receiver has been appointed and where no issue of fact is involved, fix and allow an attorney's fee to one who has maintained a successful suit whereby he has indisputably increased or preserved the common fund. See, in this connection, *Eckford* v. *Atlanta,* 173 *Ga.* 650, 652 (2) (su-

pra); *United States Fidelity & Guaranty Co.* v. *Clarke,* 187 *Ga.* 774 (12), 794 (supra). But this does not mean that, where the one contested issue is whether a petitioner has brought a fund into court, or preserved a common fund, the court, over the protest of one of the parties to the litigation, should assume the office of a trior, and in order to determine the propriety of attorneys' fees, himself adjudicate the main contention made by the petition and plea. Accordingly, as the writer of this dissent sees it, where this court in effect holds that the issues made by the amendment to the petition with respect to the alleged savings to the corporate assets by the plaintiffs were not by the record foreclosed in the plaintiffs' favor—even if the petition can be properly construed to mean that a prayer is made for an adjudication on such contested issue of fact —the only trior of such an issue, save by consent of the parties, is a jury; and, since the only interpretation which can properly be made of the plaintiffs' prayer is that the court is asked to set a convenient date and itself try these issues of fact, without recourse to a jury, not by consent, but over the actual protest of the defendants as set forth in the demurrer, the court properly refused to assume any such unauthorized function.