DAVISON-PAXON CO. *v.* WALKER; *et vice versa.*

No. 8314.   February 27, 1932.

**534**

*Alston, Alston, Foster & Moise* and *W. H. Sibley,* for Davison-Paxon Co.

*Branch & Howard, W. H. Vermilya,* and *G. D. McKay,* contra.

BECK, P. J. ▮ We are of the opinion that the first question should be answered in the negative. In a suit for malicious use of process "it is well settled that the plaintiff must allege three things: (1) that the suit against him was malicious; (2) that it was without probable cause; and (3) that it had terminated in his (plaintiff's) favor before the suit for damages was filed." *Clement* v. *Orr,* 4 *Ga. App.* 117, 118 (60 S. E. 1017); *Marable* v. *Mayer,* 78 *Ga.* 710 (3 S. E. 429). Allegations of a petition, in a suit for malicious use of process, that the former suit was an action of bail-trover, and that after the plaintiff had been arrested by an officer who was required by law to execute the process she regained her liberty by paying an amount equal to the value of the property sued for and the costs of the suit, "being without means at the time to give the bond required by law in such cases," and thereupon the suit against plaintiff was marked "settled and satisfied and terminated," do not sufficiently show, as against a general demurrer, that such former action terminated in favor of the defendant therein. The suit being marked "settled and satisfied and terminated" indicates rather the contrary result, that is, that the former action terminated in favor of the plaintiff.

▮ We are of the opinion that a negative answer should also be given to the second question. In *Robinson* v. *Commercial Credit Co.,* 37 *Ga. App.* 291 (supra), which was a suit for malicious abuse of process, it was said: "It is alleged by the petition in the present suit that the present defendant sued out bail-trover process against

the plaintiff, to recover a certain automobile to which it claimed title, and that such process was sued out, not for the purpose of recovering the property, but for the purpose of 'collecting the balance due on said automobile;' and that the present plaintiff, by reason of his having been unable to give security as provided by law, was arrested under the bail-trover proceeding and held in jail until he paid the balance due. The allegations of the petition did not set forth an abuse of legal process. Malicious abuse of legal process is where the plaintiff in a civil proceeding wilfully misapplies the process of the court in order to obtain an object which such a process is not intended by law to effect, as contradistinguished from malicious use of process, where the plaintiff in a civil proceeding employs the court's process in order to execute an object which the law intends such a process to subserve, but proceeds maliciously and without probable cause. *McElreath* v. *Gross,* 23 *Ga. App.* 287 (98 S. E. 190) ; *Roberts* v. *Willys-Overland Inc.,* 27 *Ga. App.* 304, 305 (108 S. E. 138). In the instant case it does not appear that in the trover proceeding the court's process was misapplied in order to obtain an object which such a process is not intended by law to effect, since 'the legitimate purpose of making an affidavit to require bail in an action to recover personal property is to require bond to be given for the forthcoming of the property to answer such judgment, execution, or decree as may be rendered or issued in the case, or, on failure thereof, to have the officer seize the property, or, if it is not to be found, to have the defendant committed to jail until the property shall be produced or bond be given, unless the defendant shall be released without security.' " In *McElreath* v. *Gross,* supra, it was said: "No misapplication or perversion of the court's process is made to appear. The object attained in suing out the petition for injunction was not a perversion of that process. If the purpose and effect of suing out the process had been to maliciously injure, harass, and humiliate the plaintiff, and it had been instituted without probable cause, but not actually put to some unauthorized use, there would have been a malicious use of legal process; but in order for there to be a malicious abuse of process, it must be wilfully misapplied or perverted to some use which the law did not intend that such a process should subserve."

These rulings by the Court of Appeals of this State are sup-

ported by numerous authorities which are to be found both in text-books and in the decisions of courts of other States. In 1 R. C. L. 102, it is said: "The two kinds of actions really necessary to be distinguished are actions for abuse of process and actions for malicious prosecution. The distinctive nature of an action for malicious abuse of process, as compared with an action for malicious prosecution, is that it lies for the improper use of process after it has been issued, not for maliciously causing it to issue." It is further said: "It would seem to be only when process is perverted, i. e., directed outside of its lawful course to the accomplishment of some object other than that for which it is provided, that one, acting upon probable and reasonable cause, may yet become liable for so misusing the process as to be guilty of an abuse thereof. And to constitute such improper direction of process, the mere existence of an ulterior motive in doing an act proper in itself does not suffice, but there must be such a use of it as is in itself without the scope of the process and improper, from which motive may perhaps be inferred. It would seem both from authority and reason that to sustain the action these two elements are essential: (1) the existence of an ulterior motive, and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge. The first of these elements may, perhaps, be inferred from the second, but the existence of the first can not, in reason, dispense with proof of the second; for if the act of the prosecution be in itself regular, the motive, ulterior or otherwise, is immaterial. The test is probably whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do." In the case of Glidewell v. Murray-Lacy & Co., 124 Va. 563 (98 S. E. 665, 4 A. L. R. 225), the court said: "The distinctive nature of an action for abuse of process, as compared with the actions for malicious prosecution and false imprisonment, is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person," citing Cooley on Torts (3d ed.), 355, where the author says: "Two elements are necessary to an action for the malicious abuse of legal process: first, the existence of an ulterior purpose; and, second, an act in the use of the process not proper in the regular prosecution of the proceeding.

Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." The Virginia court, in the Glidewell case, supra, said: "The plaintiff's case, however, . . can not be maintained. It may be conceded that the first essential element of the tort, an ulterior motive, was established. To say the least of it, the evidence tended strongly to show that the real purpose of the defendants was not to enforce the criminal law, but to collect their debt; and as a general proposition, it is illegal to use the criminal processes of the State merely to redress a private wrong. But before this ulterior purpose can be made the basis of a recovery in an action for the abuse of process, it must be coupled with the second essential element; that is, with 'an act in the use of the process not proper in the regular prosecution of the proceeding,' amounting to its perversion to some unlawful purpose. Proof of indirect motive will not alone sustain the action. . . It is at this point that the plaintiff's case unmistakably breaks down."

In the brief of counsel for defendant in error it is insisted that the facts in the instant case make a case, in essential elements, almost identical with that of *Brantley* v. *Rhodes-Haverty Furniture Co.,* 131 *Ga.* 276 (supra). But there are essential differences between that case and this. In the *Brantley* case it was said: "As amended, the petition alleged that the affidavit to obtain bail process was made maliciously and without probable cause, and for the purpose of forcing plaintiff in the present case to give up a certain piece of jewelry which she wore on her person, and to compel her to pay a certain debt. And again it was alleged that the purpose of the process was not to obtain the furniture or bond, but to coerce payment; and that it was used for the purpose of having her arrested and compelling her, while under arrest, to surrender a piece of jewelry as security, and to sign a paper agreeing to pay $10 per month until the balance due on the furniture which she had bought should be settled. The legitimate purpose of making an affidavit to require bail in an action to recover personal property is to require bond to be given for the forthcoming of the property to answer such judgment, execution, or decree as may be rendered or issued in the case, or, on failure thereof, to have the officer seize the property, or, if it is not to be found, to have the defendant committed to jail until the property shall be pro-

duced or bond be given, unless the defendant shall be released without security, as provided in section 4608 of the Code. Civil Code [1895], §§ 4604-4608. It is not the legal purpose of such a proceeding to compel the defendant to give up other property as security for a debt, nor to force the defendant to enter into a new and different contract in regard to payment, or else go to jail. While debtors ought to pay their debts, and parties may settle their controversies or their lawsuits, yet, if a bail process and arrest under it are used, not for the purpose of obtaining security as provided by law, or to cause the property to be seized, but maliciously for the purpose of coercing the delivery to the plaintiff of other property as a security for a debt and the making of a new contract, this is an abuse of legal process." That case is not in all essential particulars identical with the present case; for it was there alleged that the plaintiff in the suit to recover furniture, alleged to be in the possession, custody, or control of the defendant, "knew that the defendant in that suit did not have the property in her possession, custody, or control; that it was the purpose of the proceeding to compel her to give up a certain piece of jewelry which she wore on her person, and to pay a debt due by her for a balance of the purchase-money on the furniture;" and that is essentially different from the allegations indicated by the question which we are answering. The following was quoted, apparently with approval, from 19 Am. & Eng. Enc. Law, 630-632: "The principal distinction between an action for malicious abuse of process and one for malicious prosecution is, that while the former lies for an improper use of the process after it issues, the latter is a malicious suing out of the process without probable cause." See also *Clement* v. *Orr,* supra, where the law relating to malicious use and malicious abuse of legal process was discussed at some length. Other cases might be cited to sustain those from which the foregoing quotations are taken. It does not appear from the certified question that there was an improper use of the process after it issued. It was issued for the purpose for which the law intended it should be, and brought about a settlement of the suit "in the plaintiff [that is, the plaintiff in the bail-trover proceeding] receiving the particular property sued for, or its equivalent in money." If it had been used for the purpose of compelling plaintiff in the present case to enter into some new contract not relating

to the property sued for, or if it had been used to coerce the plaintiff in this suit to surrender or to deliver to the plaintiff in the trover suit articles of personal property, like jewelry or something else, different from that which was described in the bail-trover proceeding, then it would have been brought within the ruling in *Brantley* v. *Rhodes-Haverty Furniture Co.,* supra. In view of what is said above and the authorities cited, the second question is also answered in the negative.

In the brief of counsel for defendant in error it is suggested that the question propounded by the Court of Appeals does not fairly state the case made by the record, and that this court should read the second question propounded by the Court of Appeals in the light of the facts set forth in the second count of the petition, and should decide the case, not upon the question as propounded, but upon that question as it should be modified in view of the allegations in the petition. This court will not go into the record for the purpose of determining whether the Court of Appeals has submitted a proper question or not, in view of the issues in the case, but will decide the questions as propounded. The answer of this court is binding upon the Court of Appeals as to the question of law made by the question propounded; but if the question is not properly framed so as to deal with the real issue in the record, the Court of Appeals is still left to decide the case as made by the pleadings.

*All the Justices concur, except Russell, C. J., who dissents.*