## ELLIS *v.* MILLEN HOTEL COMPANY.

No. 13636. APRIL 17, 1941.

*Pierce Brothers, Benjamin E. Pierce Jr., and Franklin H. Pierce,* for plaintiff in error.

*A. S. Bradley,* contra.

BELL, Justice. Millen Hotel Company filed its equitable petition against H. G. Ellis, in which it alleged that the defendant had rented from the plaintiff a certain hotel in Millen, under a lease a copy of which was attached to the petition; that at the time of filing the suit the defendant was indebted to the plaintiff $758.94 for rent, and $49.46 for parts of a furnace, making a total of $805.40, and judgment for that sum was prayed. Further allegations were, that by the terms of the contract the defendant had conveyed to the plaintiff, as security for the rent, all property used in connection with the operation of the hotel; that defendant had

not furnished a list of such property, but it was then in the hotel; that defendant refused to deliver possession of the hotel to plaintiff, although the rent was past due, and had threatened to remove his property from the premises and convey it to persons who would seek to hinder and delay plaintiff in the collection of its rent; that the property was such as was likely to be concealed, and the defendant refused to allow an inspection of the hotel; that he was in possession of the property pledged and conveyed by him to plaintiff as security for the rent; that he was operating the hotel in such way as to destroy its value; that under the lease contract he was required to turn the hotel over to plaintiff immediately after demand therefor and in default of payment of rent; that such demand had been made; and that plaintiff had no adequate remedy at law. The plaintiff prayed that the defendant be restrained from removing any property from the hotel; that he be enjoined from interfering with plaintiff's possession of the hotel; and that judgment be awarded against the defendant for $805.40, covering the amount alleged to be due. The judge granted a temporary restraining order.

The defendant answered, denying the allegations as to indebtedness, and setting up by way of cross-action that he had been damaged $3000 by the plaintiff's taking possession of his property, an itemized statement of damages being attached, and asking also for punitive damages of $5000, his allegations being as follows: "18 . . (b) That said petition was filed by said plaintiff solely for the purpose of embarrassing and damaging this defendant, and in order to procure title to the property covered thereunder, and defendant says that [as] evidence of this determination, in the absence of defendant, plaintiff proceeded to take out a distress warrant, although said property was tied up under an injunction procured by it, and was therefore in possession of this court. (c) That said plaintiff has obtained possession of the property belonging to this defendant, as per the attached statement, marked exhibit 'A' and by reference made a part hereof, all of which said property this defendant alleges was worth the sum of $3000 or other large sum. (d) That the filing of the suit by the plaintiff under the circumstances enumerated was malicious and was done for the purpose of depriving him of the possession of said hotel, and to obtain property belonging to this defendant, when in truth and in fact

plaintiff knew that this defendant was not indebted to it in any sum whatsoever, and therefore damaged him in the sum of $5000. Wherefore, having fully answered, defendant prays judgment in his favor in the sum of $8000 by way of cross-bill."

The plaintiff demurred to the cross-action, and moved to strike the paragraphs quoted above. It offered an amendment to its petition, in the first paragraph of which it withdrew its prayer for a money judgment against the defendant for $805.40, and in the other paragraphs alleged that a distress warrant had been issued, and, no counter-affidavit having been filed, the property was sold thereunder and bought in by the plaintiff. The amendment further alleged: "The present proceeding for restraining order and injunction was filed subsequently to the issuance of the distress warrant mentioned, and subsequently to its being placed in the hands of the sheriff of Jenkins County, and the present proceeding in equity was therefore brought in aid of said distress warrant and for the purpose of preventing, if possible, the defendant from surreptitiously removing his goods and chattels so that the same might not be found and levied on by the sheriff under such distress warrant." The defendant moved to strike all of such amendment, except the paragraph withdrawing the prayer for a money judgment. The judge allowed the amendment, overruled the motion to strike, sustained plaintiff's demurrer to defendant's cross-action, and directed a verdict for the plaintiff. To these rulings the defendant excepted. While error is assigned on the direction of the verdict without introduction of any evidence, the plaintiff in error in his brief expressly abandons this exception in so far as it is based on the ground that it was error to so direct the verdict without the introduction of evidence, and relies solely upon his exceptions to the rulings on the pleadings.

■ The statement preceding sufficiently describes the complainant's petition. There was no demurrer. The plaintiff amended by striking its prayer for a money judgment, and alleging that a distress warrant had issued in its behalf against the defendant as a tenant; that the petition in equity was filed in aid of that warrant; and that, no defense having been made to the warrant, the property was sold thereunder and bought in by plaintiff. The defendant demurred to this amendment, except to that part which struck the prayer for a money judgment. We see no merit in the

contention that this ruling was erroneous. The issuance of the distress warrant based upon the same cause of action did not prevent the filing of a petition for injunction as an ancillary proceeding. *Chapple* v. *Hight,* 161 *Ga.* 629 (131 S. E. 505).

■ Aside from the denials and admissions, the answer contained a cross-action, the allegations and prayers of which have been quoted above. The entire cross-action was properly stricken on demurrer. (1) It did not allege sufficient facts to show that the plaintiff obtained possession of the personal property in such manner that it became liable to the defendant for the value thereof. (2) The defendant contends that his cross-action was a counter-suit for *abuse* of legal process, and that he did not have to allege termination in his favor of the distress warrant or of the equitable suit. Even assuming that the cross-action might be so characterized, it did not state a cause of action. Whether or not the allegations were sufficient to show an ulterior motive, "the distinctive nature of an action for malicious abuse of process, as compared with an action for malicious prosecution, is that it lies for the improper use of process after it has been issued, not for maliciously causing it to issue." 1 R. C. L. 102, quoted with approval in *Davison-Paxon Co.* v. *Walker,* 174 *Ga.* 532, 536 (163 S. E. 212). In the same case other authority was quoted, to the effect that before an ulterior purpose can be made the basis of a recovery in an action for abuse of process, it must be coupled with a second essential element; that is, with an act in the use of the process, not proper in the regular prosecution of the proceeding, amounting to its perversion to some unlawful purpose. Proof of indirect motive will not alone sustain the action. In the instant case the proceedings appeared to be regular, and it was not shown that they had been used to accomplish any unlawful end, or to compel the defendant to do any collateral thing which he could not lawfully be compelled to do. Under the decision in *Davison-Paxon Co.* v. *Walker,* supra, the allegations were fatally deficient when considered as an action for abuse of legal process. See *McElreath* v. *Gross,* 23 *Ga. App.* 287 (2) (98 S. E. 190) ; 50 C. J. 613, § 374. The case differs from *Mullins* v. *Matthews,* 122 *Ga.* 286 (50 S. E. 101), where it was alleged in effect that the defendant in the process was compelled to do stated acts as a result of the proceeding. It may be also stated that the suit there for malicious abuse of process was

an independent action, and was not, as here, a cross-action filed in a case instituted by the opposite party. (3) The defendant does not contend that his cross-action should be considered as a suit for malicious *use* of process; so it is unnecessary to determine whether in that view it would be defective as failing to show termination, in his favor, of the original case. Compare *Sparrow* v. *Weld*, 177 *Ga.* 134 (169 S. E. 487). (4) In addition to what has been said, the defendant could not by way of cross-action sue the plaintiff for damages for having filed and prosecuted the very action in which the defendant asserts such counter-claim. "There is no law by which every case brought by a plaintiff can be turned into a damage suit by the defendant against the plaintiff for bringing it, while it is still pending." *Fender* v. *Ramsey*, 131 *Ga.* 440, 443 (62 S. E. 527). The cross-action was not germane, and thus could not be maintained under the Code, §§ 37-105, 37-905, 81-106. Compare *Peterson* v. *Lott*, 137 *Ga.* 179 (73 S. E. 15); *Atlanta Northern Railway Co.* v. *Harris*, 147 *Ga.* 214 (93 S. E. 210); *State of Georgia* v. *Callaway*, 152 *Ga.* 871 (2) (111 S. E. 563). The counter-claim for damages did not grow out of any breach of the contract sued on, and was not maintainable as plea of recoupment. *Brown* v. *Alfriend*, 61 *Ga.* 12 (2); *Johnston* v. *Patterson*, 86 *Ga.* 725 (3) (13 S. E. 17); *Giles* v. *Bank of Southwestern Georgia*, 102 *Ga.* 702 (2) (29 S. E. 600); *Dooley* v. *Gorman*, 104 *Ga.* 767 (31 S. E. 203); *Arnold* v. *Carter*, 125 *Ga.* 319 (54 S. E. 177), and cit.; *Smith* v. *Green*, 128 *Ga.* 90 (4) (57 S. E. 98).

*Judgment affirmed. All the Justices concur.*