## 60890. TRAWICK v. CONSOLIDATED CAPITAL GROWTH FUND.

McMurray, Presiding Judge.

ITR Properties, Inc., doing business as LeMans I Apartments, leased to Timi Trawick a residential apartment for a period of 12 months ending August 31, 1978. The rent was payable monthly in advance at a gross rate of $280 per month, but if the rent was received in the rental office prior to the 6th of the month a discount of $15 was allowed and the net rent was stated to be $265. Either party might terminate the agreement at the end of the initial term by giving the other 30 days' written notice prior to the expiration date "but if no notice is given, then the agreement will be extended on a month-to-month basis with all terms remaining the same until terminated by either party upon thirty (30) days written notice." The lease contained many other clauses which are not involved here. Apparently Consolidated Capital Growth Fund, now doing business as LeMans I Apartments, became the successor of the lessor, ITR Properties, Inc.

In March, 1979, Timi Trawick failed to pay before the 5th of the month but delivered her check for $265 on March 7, 1979, in payment of the rent. The lessor contends it refused payment and demanded payment of the full $280, the refused check as well as the demand for payment of the full $280 rental being slipped under the lessee's door in an envelope. Trawick, the lessee, contends, however, that she was unaware of this and did not realize until March 19 that there was a problem. On that date she returned home and found a dispossessory summons taped to her door. She then contends she wrote a check to the lessor ("or its agent, Johnston [sic] Properties") for $280, and the lessor's agent accepted the check and agreed to dismiss the dispossessory proceedings. She then contends that on April 1, 1979, she paid the April rent for the apartment and that during the week of April 9, 1979, she was notified that the check she had written for the March rent had been returned for insufficient funds. She did not admit that the check was not a good check.

On April 16, 1979, a second dispossessory proceeding was initiated which the lessee contends she received on April 17, 1979, by finding it taped to her door. On April 19 she contends she went to the Justice of the Peace handling the dispossessory proceeding and told the Justice of the Peace the circumstances involved, filled out a form and claims this was an answer to the dispossessory proceeding and that the Justice of the Peace told her that everything would be fine if she paid all that she owed by May 1, 1979.

On April 24, 1979, the proceeding against the tenant holding

over came on for a hearing. The defendant having failed to answer within the first 7 days required by law and thereafter failed to reopen the default on the first day of May, 1979, an application for writ of possession was granted and issued on May 2, 1979. Trawick, the lessee, contends that she thereafter found her belongings moved out into the street on May 2, 1979.

Whereupon Timi Trawick, as plaintiff, sued Consolidated Capital Growth Fund, d/b/a LeMans I Apartments, contending that on or about April 30, 1979, she had presented a cashier's check to defendant's agent to satisfy the rent allegedly due, the check was accepted but in spite of the acceptance of the cashier's check defendant "wilfully and maliciously had Plaintiff evicted from her apartment" for the sole purpose of injuring her. She sought damages in the sum of $10,000 because of the wrongful dispossession and the sum of $25,000 as a result of the wilful and malicious action, having suffered much humiliation, embarrassment, and mental distress. She also sought damages for her misplaced or destroyed property, contending she had been damaged in the sum of $15,000 as a result of such wrongful and malicious dispossession. Plaintiff also sought punitive damages in the amount of $25,000.

The defendant answered, denying the claim in its entirety, and pleaded other defenses. These were: failure to state a claim, estoppel, waiver; plaintiff's injuries, if any, were solely and proximately caused by her own negligence and not as a result of any breach of duty or improper conduct on the part of the defendant; the failure of the plaintiff to exercise ordinary care, lack of jurisdiction over the person of the defendant, improper venue, insufficiency of process, and insufficiency of service of process. It is further contended that there was no malicious or wilful conduct toward the plaintiff, same being authorized by law under the circumstances.

Shortly after answering, the defendant filed its motion for summary judgment and brief in support of same, attaching a certified copy of the dispossessory proceeding in its entirety.

Whereupon the plaintiff amended her complaint so as to plead a wrongful eviction from her apartment although she had complied with her contract of rental and had justifiably relied on the actions of the defendant; malicious abuse of civil process by the defendant in bringing the dispossessory action although defendant knew (or should have known) that the dispossessory proceeding should not have been brought at that particular point in time, and breach of the contract by and between the parties by reason of defendant's evicting her from the premises.

Defendant's motion for summary judgment was thereafter denied.

After discovery by both parties, including plaintiff's interrogatories to the defendant and the taking of the plaintiff's deposition by the defendant, defendant filed a second motion for summary judgment. The second motion for summary judgment was granted, and plaintiff appeals, contending that genuine issues of material fact remain to be tried, particularly in regard to her allegations of wrongful eviction, malicious abuse of process, and breach of contract. *Held:*

1. Where one in a civil proceeding employs the court's process in order to execute an object which the law intends for such a process to subserve, but proceeds maliciously and without probable cause, this is defined as malicious use of legal process. See *McElreath v. Gross,* 23 Ga. App. 287 (1) (98 SE 190); *Roberts v. Willys-Overland, Inc.,* 27 Ga. App. 304, 305-306 (108 SE 138); *Davison-Paxon Co. v. Walker,* 174 Ga. 532, 535 (163 SE 212). Malicious abuse of legal process, however, is where one in a civil proceeding wilfully misapplies the process of the court in order to obtain an object which such process is not intended by law to effect. *Davison-Paxon Co. v. Walker,* 174 Ga. 532, 535, supra; *Cooper v. Public Finance Corp.,* 146 Ga. App. 250, 254 (246 SE2d 684); *Whitehead v. Southern Discount Co.,* 109 Ga. App. 126 (1) 127-128 (135 SE2d 496). However, a regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process. See *Whitehead v. Southern Discount Co.,* 109 Ga. App. 126, 128, supra.

The defendant here sought summary judgment since it contends the dispossession was done pursuant to law, and the plaintiff failed to show that the defendant maliciously sued out the civil process without probable cause as the same did not terminate in her favor. In support of its motion it attached certified copies of the court records of the Justice of the Peace Court for the 572nd District, G.M., DeKalb County, of the State of Georgia. Consequently, we are no longer concerned here that the plaintiff was seeking to prosecute a malicious use of legal process action. The action terminated in her eviction. *Myers v. Clark,* 126 Ga. App. 154, 155 (2) (190 SE2d 134); *West Ga. Pulpwood & Timber Co. v. Stephens,* 128 Ga. App. 864, 868 (1) (198 SE2d 420).

However, no other evidence was presented by the defendant except the deposition of the plaintiff with certain documents attached, much of which is shown above and stated as facts with reference to the circumstances surrounding the eviction of the plaintiff. These documents were never admitted nor were they identified as true by anyone.

2. As to an action for malicious abuse of legal process two elements are necessary, that is, the existence of an ulterior motive

and an act in the use of the process not proper in the legal process of the proceeding. *Davison-Paxon Co. v. Walker,* 174 Ga. 532, 536, supra; *Whitehead v. Southern Discount Co.,* 109 Ga. App. 126, 128, supra; *West Ga. Pulpwood & Timber Co. v. Stephens,* 128 Ga. App. 864, 868, supra.

3. "Where the landlord accepts rent from the tenant after the default but before the dispossessory proceeding, the landlord then has no right to institute dispossessory proceedings against the tenant during the ensuing period on account of the tenants' arrears in the payment of past due rent. *Hicks v. Beacham,* 131 Ga. 89 [92 (1)] (62 SE 45); *Plowden v. Hall,* 55 Ga. App. 321 (190 SE 37); *Gay v. American Oil Co.,* 115 Ga. App. 18, 20 [21] (153 SE2d 612); *Yates v. Farmer,* 102 Ga. App. 570, 572 (117 SE2d 211)." *Kunian v. Mangel Stores Corp.,* 140 Ga. App. 244, 245-246 (1) (230 SE2d 492). Thus, the back rent could not be collected by threats of eviction after accepting later rental payments, that is, rents accepted as being for the current month.

4. Plaintiff's evidence in opposition to the motion for summary judgment is that during the month of March the defendant refused to accept a check in the amount of $265 ($280 less a $15 discount) which was admittedly delivered on March 7, 1979, instead of the 5th of that month. A dispossessory proceeding was instigated against her but same was apparently dismissed when she paid in full her rent of $280. One of the exhibits in her deposition was a copy of a check made payable to "Johnston [sic] Properties" for $280. We are unable to ascertain if Johnstown Properties is the agent of the lessor although the plaintiff contends that the lessor's agent accepted the check and agreed to dismiss this dispossessory proceeding. She then contends that she paid the April rent on April 1, 1979, but during the week of April 9, 1979, she was notified that the check she had written for the March rent had been returned for insufficient funds. In the record here we have no evidence that a check was actually returned for insufficient funds although this could be inferred from the evidence. However, in her deposition she was questioned with reference to another notice of a returned check by someone signing as manager that a check had been returned for the period "3-1-79 to 4-1-79," marked "Not sufficient funds" and in which notice the landlord apparently seeks "the above amount in cash or money order together with returned check charge of $15.00 and late rent charge of $15.00." An inference may be drawn from this exhibit, not admitted as having been received by the plaintiff and no one having testified as to its contents or as to having sent it, that the landlord was seeking not the sum of $280 but in addition the sum of $30 or a total of $310. A date of "3-31-79" was shown on this exhibit which was signed by one

"Ceil Brooksbank," as manager. Deponent was also examined with reference to another exhibit, a three day notice to pay addressed to her as tenant in possession for default of rental agreement in the amount of $295; that is, $265 for rent "3-1-79" to "4-1-79," with a late fee of $15 and a "Not Sufficient Funds" fee of $15. This exhibit was dated "3-31-79," signed by "Ceil Brooksbank of Johnstown Properties, S.E., Agent." Again, no one testified as to the contents of this document.

The deponent was also examined with reference to another note from Ceil Brooksbank, Manager, dated 4-9-79, for an "NSF check for March of 265.00 plus your NSF fee of 15.00 and late fee of 15.00 for a total of $295.00," and if not received by the 11th action would be taken. In addition the deponent was examined with reference to another note from Ceil Brooksbank, Manager, as follows: "Enclosed please find your check for March rent making up your NSF check. I am returning this as it does not include the dispo fee of $15.00. I must have this no later than midnight tonight for tomorrow is your . . . [illegible in copy in record] . . . if you have any questions please contact the office; otherwise I will expect a check in the amount of $300.00." No evidence has been presented showing a notice that the lease has been breached, and that defendant demanded possession of the premises.

Plaintiff herein has set forth a claim of wrongful eviction (dispossession), malicious dispossession, compliance with her rental contract, malicious abuse of civil process, and breach of contract by the defendant, admitting, however, that she had been dispossessed, suffering damages of embarrassment, humiliation, mental distress, reputation and loss of personal property "misplaced and/or destroyed." The evidence is insufficient to support the grant of summary judgment against the plaintiff. An inference has been made by the exhibits attached to her deposition that even after or on the same date that the writ of possession was executed defendant was seeking to collect not only the rent due of $280, but "the amount of $300.00" which could be said to be an attempt to obtain the payment of money for which the process is not intended by law to effect. *West Ga. Pulpwood & Timber Co. v. Stephens,* 128 Ga. App. 864, 868-869 (2), supra, and cases cited; *Wilkinson v. Davis,* 148 Ga. App. 696, 701 (2) (252 SE2d 201). Plaintiff also alleged a payment of all rent due and accepted by cashier's check, and this has not been overcome by evidence.

Plaintiff also claims that she was wrongfully evicted and cites in support thereof such cases as *Cannon v. Laing,* 153 Ga. 88 (3, 4) 91 (111 SE 565); *Sinclair Refining Co. v. Stovall,* 41 Ga. App. 214 (1) (152 SE 291); *State of Ga. v. Sanks,* 225 Ga. 88, 91 (166 SE2d 19); *Murray v.*

*Thompson,* 149 Ga. App. 852 (256 SE2d 139). While these cases appear to involve wrongful eviction where the party has not violated the lease or rental contract, all we have here is a dispute by and between the parties with reference to a mixup of payment with no definite evidence that no issue of material fact remains so as to demand a judgment in favor of the defendant.

Since the evidence and pleadings are insufficient to demand a finding in favor of defendant, the judgment must be reversed. *Lansky v. Goldstein,* 136 Ga. App. 607 (1) (222 SE2d 62); *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 5 (1) (126 SE2d 442).

*Judgment reversed. Smith and Banke, JJ., concur.*

ARGUED OCTOBER 9, 1980 — DECIDED
DECEMBER 5, 1980.

*Brenda G. Holbert,* for appellant.
*Robert G. Tanner,* for appellee.