## 61167. FERGUSON v. ATLANTIC LAND & DEVELOPMENT CORPORATION.
## 61296. WADE v. ATLANTIC LAND & DEVELOPMENT CORPORATION.

McMURRAY, Presiding Judge.

These appeals involve further litigation by and between the parties which has not been settled by two previous appeals. See *Ferguson v. Golf Course Consultants,* 243 Ga. 112 (252 SE2d 907); and *Ferguson v. Bishop,* 150 Ga. App. 469 (258 SE2d 143). Reference is here made to these two cases for a full understanding of the facts involved. However, we add the following:

Ferguson and Ullman had an oral joint venture relative to real

property involved in these cases. Ferguson had bought the land in his own name from one of Ullman's many corporations to help Ullman avoid foreclosure. They orally agreed for another Ullman corporation to then develop the land, for Ullman to find a buyer, and for the proceeds to be divided between Ferguson and Ullman when Ullman found a buyer. A buyer was found. Without first consulting with Ferguson, Ullman signed Ferguson's name on a warranty deed transferring the property from Ferguson as grantor to the corporation, Golf Course Consultants, Inc. Ralph A. Wade served as treasurer of Golf Course Consultants, Inc. Joyce E. Kitchens was a de facto employee of Golf Course Consultants, Inc., although paid by another corporation; but she performed services for both corporations. The warranty deed, which caused all the trouble, was undated but was duly witnessed by Ullman and Wade and notarized by Kitchens. Wade contends that the warranty deed was undated and unsigned by the grantor when he witnessed it as a convenience, being under the impression that Ullman would then take it to Ferguson to obtain his signature. Thereafter it was returned to him by Ullman with Ferguson's signature (a forgery) thereon, and he (Wade) had it properly recorded. He contends that he had no knowledge of any forgery as to Ferguson's deed at the time he signed as a witness, admitting, however, it was undated and unsigned.

Certain improvements were made to the property by the corporation, and part of it was thereafter sold to Atlantic Land & Development Corp. (hereinafter referred to as "Atlantic"), a bona fide purchaser for value of part of the property here involved (a total of 40 lots).

When Ferguson was notified about the sale he expressed no dissatisfaction but was glad to hear about the sale and received a check representing part of the proceeds of the sale. Later, however, Ferguson wanted Ullman to pay him additional sums in return for his not raising any issue as to his signature by Ullman. When Ullman refused, Ferguson proceeded to sue in equity to quiet title. A number of parties were involved as defendants. See *Ferguson v. Golf Course Consultants,* 243 Ga. 112, supra.

Ferguson also filed another action against a number of defendants, including those in the first suit as well as others, alleging that they individually and jointly acted to defraud him by forging his name to the deed purporting to transfer the property from him to Golf Course Consultants, Inc. See *Ferguson v. Bishop,* 150 Ga. App. 469, supra. Ferguson therein sought damages and to cancel defendant Atlantic's deed to the property. By amendment the allegations of fraud against the defendants were changed to allegations of negligence and forgery and for damages against all concerned.

When Atlantic closed the purchase of the 40 lots it had borrowed $116,500 from a bank. Defendant Atlantic in its answer to the quiet title suit, counterclaimed for title to be decreed in it. In its answer filed to the other suit it filed a counterclaim against Ferguson and cross claims against Ullman, Golf Course Consultants, Inc., Wade, Kitchens, and others, seeking damages for the various costs and expenses incurred by it by reason of the filing of the actions against it.

With reference to the main actions summary judgment was granted in favor of the defendants against the plaintiff Ferguson. The summary judgment was affirmed as to the petition to quiet title in *Ferguson v. Golf Course Consultants, Inc.,* 243 Ga. 112, supra, by reason of Ferguson having knowingly consented to the sale in return for the financial benefits he received, the same being a ratification of his signature by Ullman on the deed. As to the second action filed by Ferguson, summary judgment was also granted to the various other defendants. An appeal to this court was transferred to the Supreme Court (action involving cancellation of a deed), and thereafter retransferred back to this court. This court affirmed the summary judgment as to the damage suit by reason of the fact that the forgery was the same and evidence on that issue identical, as the plaintiff Ferguson had ratified the placing of his signature on the deed. See *Ferguson v. Bishop,* 150 Ga. App. 469, 472, supra.

Summary judgment in favor of Atlantic, as to the plaintiff Ferguson's claim in the two cases, became final after the appeal. The defendant Atlantic then amended its original answer, counterclaim and cross claims in the second suit, seeking to recover damages it had incurred from the plaintiff as well as the fraud of the co-defendants Ullman, Wade, Kitchens, and Golf Course Consultants, Inc. In Count 1 of its counterclaim against the plaintiff Ferguson it alleged fraudulent misconduct of the plaintiff as well as the fraudulent misconduct of the co-defendants, Ullman, Wade, Kitchens, and Golf Course Consultants, Inc., as imputable to the plaintiff Ferguson, seeking actual and punitive damages arising out of the wilful fraud. Count 2, added to the counterclaim, alleged that the main actions terminated in its favor by reason of the affirmance of summary judgment on appeal, and it sought damages as constituting a malicious use and abuse of process by reason of the plaintiff's actions as being guilty of wilful, malicious, fraudulent, wanton, and oppressive misconduct in total disregard of the rights of the defendant, Atlantic. In Count 3, added by amendment, this defendant sought to recover against plaintiff Ferguson on the theory of libel and slander of its title as being wilful, malicious, and fraudulent misconduct by the plaintiff in total disregard of the rights of the defendant. It also amended its cross claims against the various

co-defendants seeking injunctive relief with reference to transferring, encumbering, selling, conveying or otherwise disposing of other property and again sought damages, actual and punitive, and attorney fees by reason of the execution of the fraudulent deed which created a cloud upon its title and the actual damages it incurred.

Summary judgment was granted to Atlantic on its cross claims and counterclaim for actual damages in the amount of $55,398.25, which represented charges and payments it was required to make during the litigation involved; such as interest, holding fees, building permits and increased cost of sewer tap-ins. In these two cases only the defendant Wade and the plaintiff Ferguson appeal. *Held:*

1. Generally, in this state, the defendant cannot by counterclaim bring an action for damages against the plaintiff for having filed and prosecuted the very action in which the defendant asserts the counterclaim. See *Ellis v. Millen Hotel,* 192 Ga. 66, 69 (2) (14 SE2d 565); *Ga. Veneer & Package Co. v. Fla. Nat. Bank,* 198 Ga. 591, 609 (2) (32 SE2d 465); *Alexander v. C. & S. Nat. Bank,* 212 Ga. 295, 296 (4) (92 SE2d 16); *Ga. Ed. Auth. v. Davis,* 227 Ga. 36, 40 (178 SE2d 853); *Overstreet v. Schulman,* 77 Ga. App. 320 (1), 322 (48 SE2d 474); *Medoc Corp. v. Keel,* 152 Ga. App. 684, 685-688 (2) (263 SE2d 543).

However, upon the grant of summary judgment against the plaintiff Ferguson in favor of the defendant as to the main action, which is no longer in the case, the counterclaim and cross claims remained. These were amended, and this action proceeded anew. The motion for summary judgment granted in favor of the movant here being reviewed is based upon the claims of fraud, malicious abuse and use of process and libel and slander of title.

2. The law of the case has been established that plaintiff Ferguson ratified the illegal use of his signature on the warranty deed, hence he had no claim in equity as to cancellation and to set aside the deed; or for the damages which he originally sought in the two cases filed in the trial court. See *Ferguson v. Golf Course Consultants,* 243 Ga. 112, 113, supra; *Ferguson v. Bishop,* 150 Ga. App. 469, 471-472, supra. Accordingly, as the cases were decided adversely as to plaintiff Ferguson, the defendant Atlantic now seeks damages against plaintiff Ferguson for fraudulently filing the action and alleges the original fraud of others also as being imputable to him; malicious abuse and use of process (*Davison-Paxon Co. v. Walker,* 174 Ga. 532 (163 SE 212)); and for libel and slander of title (See Code § 105-1411; *Copeland v. Carpenter,* 203 Ga. 18 (45 SE2d 197)). Compare *Berger v. Shea,* 150 Ga. App. 812 (258 SE2d 621)); all of which caused the special damages to the defendant by reason of the delay in development of the land for some 28 months, thereby depriving it of

the opportunity to develop and sell the property.

3. Only co-defendant Wade appeals as to the original parties who signed the warranty deed as a witness. By signing the deed as a witness, the same could be recorded as it stated thereon that it was signed, sealed, and delivered in this witness' presence. However, by deposition, Wade, while acknowledging that he and the notary, Kitchens, as well as Ullman, signed the deed, that they did so under the mistaken idea that Ullman was to then transport the deed to Atlanta, or New York, to obtain Ferguson's signature, and they merely proceeded in advance to sign prior to Ferguson. If this testimony were believed by a jury, then this would create an issue as to the credibility of the witness in spite of representation to Atlantic (and others) that Ferguson's signature was genuine after the deed was recorded which conflicts with his deposition that he believed that it thereafter contained Ferguson's real signature when the instrument was returned to him by Ullman for recording. Thus Wade made the representation by his signature that it was signed, sealed and delivered in his presence, which it was not, and the jury might believe this was done for the purpose of deceiving Atlantic (and all others who viewed the recorded instrument). Yet Wade denied any intent to defraud anyone, and there were jury questions as to same despite his admission that when he, the notary and Ullman in fact signed the deed, Ferguson's signature was not on the undated and unsigned instrument. Wade, in his testimony, while admitting neglect in the execution of the deed in advance of the grantor, denied scienter, and denied that he made the representation in order to deceive others as to Ferguson's signature, believing that it later did contain Ferguson's signature when Ullman returned it to him. His credibility was for the jury, and this testimony must be construed in his favor and against the movant for summary judgment as to what the facts show as to the instrument, thereafter ratified by Ferguson. See *McFarland v. Shoney's,* 144 Ga. App. 276, 277 (1) (241 SE2d 55) and cases cited. See also *Shaw v. Cook County Federal Savings & Loan Assn.,* 139 Ga. App. 419, 420 (228 SE2d 326). Whether or not his negligence caused the injury was also for jury determination. Accordingly, the trial court erred in granting the motion in favor of defendant Atlantic as to the co-defendant Wade.

4. As to plaintiff Ferguson, who has been sued in three counts in defendant Atlantic's counterclaim, and whose actions in bringing the legal action, the filing of the lis pendens, and otherwise tying up the property so that it could not be developed and sold during the 28 months, although he had prior thereto ratified the transaction, he would be liable for the proven resulting special damages to the bona fide purchaser for value, Atlantic. From our examination of the

evidence here and after establishment of the law of the case, the trial court did not err in granting summary judgment that there was no genuine issue as to any material fact concerning liability of the plaintiff Ferguson.

However, as to the award of actual damages we must examine same further:

(a) The evidence clearly establishes the amount of interest due for the 28 months during which the development of this property was held in abeyance by the lawsuit and lis pendens. Nevertheless, it is clear from the testimony that Atlantic had to borrow funds under any and all circumstances for the purchase of the property and to pay off the same by reason of its development. Atlantic contends that the loan it received was short term and that it was going to seek a development loan to pay off the existing short term one. Since it would be necessary for Atlantic to borrow funds under any and all circumstances to be paid after development and sale, it was a jury issue as to whether or not the entire interest for the 28 month period was an actual damage for which the plaintiff Ferguson would be liable. The evidence does not demand a finding that the property would be developed, sold, and the debt paid in full prior or during the 28 month period. Accordingly, the trial court erred in awarding judgment as to the amount of interest determined.

(b) Atlantic contends that the cost of the holding fees with reference to the 20 water meters at $3.25 per month for the 28 months that this project was held up by the lawsuit resulted in actual damage to Atlantic of $1,820. No evidence was presented however as to the economic propriety of maintaining these meters during the pendency of the litigation as to the title to the property. Atlantic would have incurred expenses in reconnecting these meters if service had been terminated, but in the absence of evidence as to the amount of such fees we cannot say as a matter of law that Atlantic was correct in not disconnecting same.

(c) As to the building permits which had to be used within 6 months in the amount of $4,554, this was a development expense which was lost by Atlantic, inasmuch as the development of the property was held up for 28 months thereby causing it to lose this amount because no development could be carried out, and it lost these building permits.

(d) The sewer tap-in expenses, however, in the development of the property by reason of a change in an ordinance adopted by the board of commissioners of Glynn County increasing same by $500 per lot or a total of $20,000 for the 40 lots purchased by Atlantic will be an additional future development expense. The evidence shown by affidavit as "would have been obtained" is too general and conclusory

to demand judgment for it was, as explained in sub-paragraph (a) above with reference to the amount of interest due, a jury issue as to whether development would have occurred prior to the passage of this ordinance which created an additional development expense. This likewise would be a jury question as to whether or not this sum or expense was demanded here by the evidence. The development of the various lots purchased as to time of development was not so definite and certain for the court to say as a matter of law that this was a definite and certain amount of expense chargeable to the plaintiff Ferguson by reason of the 28 month delay. The trial court erred in awarding this sum as an amount of damages.

*Judgment affirmed in part and reversed in part in Case No. 61167. Judgment reversed in Case No. 61296. Quillian, C.J., and Pope, J., concur.*

DECIDED MARCH 17, 1981 —

*Michael Jablonski, Henry Angel, Austin E. Catts,* for appellant (case no. 61167).
*George Rountree, Julian H. Toporek,* for appellee.
*Julian H. Toporek,* for appellant (case no. 61296).
*Michael Jablonski, George Rountree,* for appellee.